55 So.2d 182 (1951)
CARL's MARKETS, Inc.,
v.
DE FEO et ux.
Supreme Court of Florida, en Banc.
February 2, 1951.
On Rehearing October 12, 1951.
Rehearing Denied December 7, 1951.
Dixon, DeJarnette & Bradford, Miami, for appellant.
Hamilton & Langbein, West Palm Beach, for appellees.
*183 ROBERTS, Justice.
The plaintiff Mayme DeFeo, one of the appellees here, slipped on a string bean and fell, while shopping in defendant's self-service grocery store. Thereupon Mrs. DeFeo and her husband filed suit to recover their respective damages for the injuries sustained by Mrs. DeFeo. Verdict was for the plaintiffs, and the defendant has appealed from the judgment entered by the court below.
We think that this case is controlled by the decision of this court in Clyde Bar, Inc., v. McClamma, 152 Fla. 118, 10 So.2d 916, wherein it was stated: "Appellee [appellant] was not an insurer of appellant's [appellee's] physical safety while in the premises. Its duty was to maintain the premises in a reasonably safe condition. To discharge that duty it was obligated to exercise that degree of care and prudence which an ordinary prudent person would ordinarily exercise. Appellee was charged with the duty of observing the premises and exercising lawful care for her own safety. Negligence will not be presumed merely because of the happening of an accident. It does not appear that the danger was hidden. If appellee had exercised lawful care she would have seen the danger if any there was. Her failure to use lawful care makes her own negligent act the proximate cause of her injury."
As in the Clyde Bar, Inc., case, it is also our conclusion here that no actionable negligence was shown. And, as stated in that case, "In reaching this conclusion we are not unmindful of the rule contended for by appellee that negligence vel non is a question of fact for the jury. This rule does not govern however, where only one reasonable interpretation can be drawn from the facts. In the latter event the question of negligence vel non becomes a question of law."
For the reasons stated, the judgment appealed from should be and it is hereby
Reversed.
SEBRING, C.J., and THOMAS and ADAMS, JJ., concur.
TERRELL, J., dissents.
CHAPMAN and HOBSON, JJ., not participating.

On Rehearing Granted
PER CURIAM.
Affirmed.
CHAPMAN, ADAMS and HOBSON, JJ., concur.
TERRELL, J., concurs specially.
SEBRING, C.J., and THOMAS and ROBERTS, JJ., dissent and adhere to Opinion of February 2, 1951.
TERRELL, Justice (concurring specially).
October 15, 1946, Mayme DeFeo was a customer in Carl's Markets, Inc., a self service food store of the Supermarket type, located at Miami Beach. She slipped on a green bean, fell to the floor and sustained serious bodily injuries. This action was brought by her and husband Jerry DeFeo to recover damages for personal injuries due to the alleged negligence of defendant. The trial resulted in a judgment in favor of Mayme DeFeo for $15,000. Consequential damages were awarded Jerry DeFeo in the sum of $4,500. Final judgment was entered for the plaintiffs in these amounts and the defendant appealed. August 3, 1950, Jerry DeFeo died. Mayme DeFeo was appointed administratrix of his estate. She is defending this appeal in her own right and as the representative of her deceased husband.
The first question urged for our determination challenges the order of the trial court overruling the motion of defendant for an instructed verdict at the conclusion of the testimony, the predicate for the motion being that there was no proof of negligence.
It is admitted that appellee slipped on a green bean and fell while she was a customer in defendant's store. The evidence shows that the accident occurred about 11:30 A.M., that the floor had been swept *184 about fifteen minutes before, that appellant had no knowledge of the bean on the floor or how long it had been there before the plaintiff's fall. Appellant contends that under such circumstances, it is not the insurer of the safety of its customers but is required to exercise reasonable care only to see that the premises are kept in safe condition. It is further contended that the trial court recognized this to be the rule and instructed the jury accordingly.
Reasonable care was without question the rule governing stores and many other business places in the old day when the proprietor had his breakfast by candle light and tailored his place of business, and had it ready for customers before sun up. Such was the store that generated the reasonable care rule, it was a general merchandizing establishment, the food section occupied space in the rear and the invoice consisted of a cracker barrel, a box of white bacon, a few barrels of flour and sacks of water ground meal, a hogshead of sugar, several cases of can goods, a few caddies of plug tobacco, a barrel of kerosene, several boxes of barber pole candy, some cartons of snuff, spices, salt, soda, fresh meats on Saturday and green groceries according to the season. Trace chains, horse collars, back bands and plow handles often got mixed up with the groceries. Nothing was screened, the house fly was everywhere in evidence and the germ theory was in the future. There was an accommodating yokel dressed in jean trousers and a hickory shirt to serve the customer. The floors were of rough boards, Pop purchased the family groceries and wore shoes that did not turn easily. The customers came in singles, took their turn with the clerk and the store was kept open till bed time and longer if those who came wanted to discuss the fate of the nation around the cracker barrel.
The modern food store of the self serving super market variety is a very different institution. It is said to have had its origin about 90 years ago when George H. Hartford organized the first unit in Manhattan, out of which came the Great Atlantic and Pacific Tea Company. In 1936 it commenced self service supermarketing in foods and other household articles and now has more than 4500 stores doing more than three billion dollars of business per year. Some of the other large self serving chains are Safeway, Kroger and First National. Piggly Wiggly, Hinke and Pillot, Big Bear, Food Fair, American Stores and dozens of others are among the independent and smaller chains. Some of them have developed into onestop trading centers where the housewife not only buys the groceries for the week but she may purchase many other articles used in the home. She can get her hair marcelled and her husband can go along and get a shave and a hair cut.
The indicia of the modern self serving food store is the basket cart, self service, volume sales, minimum prices, showmanship, large and frequent turnover, small net profit, unique arrangement, color scheme attraction, Friday and Saturday specials, circus stunts in some places, and many other attractions. Some one has defined it as a combination of brilliant showmanship and the world's most modern distribution techniques. It makes the best use of color therapy to arrest the attention. Some of them provide rest facilities and nurseries, put on family nights and have reduced the wrapping problem to a minimum. They are open from eight A.M. to six P.M., they sell more than fifty per cent of the foods consumed in the country, they are replacing the old style retail store and new ones are springing up daily. They are frequented by hundreds and thousands of customers every day, the mural attractions and food displays are often spectacular and so consuming that it is said that they break down purchase resistance and encourage impulse buying. The floors are of synthetics or some species of composition tile, they are smooth and much easier to trip on than the board floors of the old store.
Nothing said here is in criticism of the self serving food store as an institution. It is a typical product of American ingenuity. It has revolutionized food merchandizing, made it cleaner and more sanitary, it has installed screens, refrigeration and other devices to preserve perishables and the people are committed to it. It dispenses thousands of items that were unknown to *185 the old grocery store. It merits the place it has made in the economy of the country but I think it has brought with it potential hazards to the customer that it cannot dodge responsibility for. I think these hazards lurk in the complete environmental differences between the two classes of food stores, the difference in service, the difference in customers, the difference in volume, the difference in floors, the difference in glamour and in addition to these and others but by no means the least of them, the self service store has dispensed with Pop and enthroned Mom as the family purchasing agent. She came in straps, pumps and high heels that turn readily on composition floors if a bean or other inducement is dropped in the way. Mom is not the athelete that Pop is, and hasn't the capacity to retrieve herself in a fall that Pop has. In fact, a tumble on the floor is one extremity in which Pop is more resourceful than Mom.
In view of these factors I think something more specific than the reasonable care rule must be imposed on the proprietor of the self serving grocery store. In fact, I think that in the light of the disparity between the modern food market and the old time grocery, it is out of the question to contend that they are governed by the same rule of care. They are so different in every essential aspect that I think it would be as reasonable to contend that the proprietor of a horse drawn vehicle would be governed by the same rule of care as the proprietor of a motor driven vehicle. The reasonable care rule may still be appropriate to some factual situations but since the judgments of men as to values now vary as the size of their shirts and shoes, it is antiquated and has no application to a case like this. If reasonable care can be construed to relieve one, the phrase is so flexible that negligence would rarely be fastened on the defendant. Rules of conduct governing a business are not rules of statute that the legislature is expected to promulgate, they are rules of reason that emanate from the court and which the court is expected to keep current. At one time they would have been designated rules of the common law which were also court made. They are essential to promote human progress and should square with changing social and economic conditions. To "burn incense" to an antiquated rule in a case like this, in my judgment, amounts to inexcusable lag in judicial administration.
The basket cart of the self serving store provides a seat to carry the baby. At the time Mrs. DeFeo was injured she was carrying her baby and collecting the family groceries. She had traded at Carl's Markets many times, she was perfectly familiar with the layout, she had a right to assume that the floors were clean. The dominant atmosphere of the self serving store reflects cleanliness. Dirt is an abomination to it. There was no reason for her to suspect a green bean or other object on the floor. In fact, I do not think that under the circumstances she was charged with looking for such impediments. This court is committed to the doctrine that the degree of care required of the operator of any business must be commensurate with the kind and danger of the business he is engaged in. I think this rule should govern the case at bar.
In Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720, we rejected the reasonable care rule which appellant seeks to invoke in this case for reasons not materially different. True the patron in that case slipped on a bottle in the aisle of the grand stand at a race course. It was not shown how long the bottle had been there, but we held that the diligence required of the proprietor must be comparable to that necessary under the circumstances to prevent accidents. In this case the evidence shows a complete lack of that degree of care, not alone in looking after the floors, but in the construction of the vegetable bins. It is shown that the vegetable bins were overfilled and it is admitted that the bean might have been on the floor at least fifteen minutes at a busy time of the day. Moone v. Kroger Grocery & Baking Co., Mo. App., 148 S.W.2d 628; Pabst v. Hillman's, 293 Ill. App. 547, 13 N.E.2d 77; Wells v. Palm Beach Kennel Club, supra. In these and many other cases the court rejected the contention that liability turns on proof that the bean or other substance *186 had been on the floor long enough to put the defendant on notice. Given any other interpretation the rule becomes shop worn and the law "goes to seed."
Other questions charge (1) error in admitting in evidence the mortality tables showing the plaintiff's future life expectency and (2) the nature of the charges to the jury with reference to the husband's right to recover for loss of his wife's services. The objection to the mortality tables was based on lack of proof of permanent injury and the fact that it was shown that Mayme DeFeo was not a person of normal health. The case was tried more than two years after the accident and Mrs. DeFeo was still a sufferer from the effects of it and there was testimony that her trouble might be permanent. I think there was ample showing to have warranted reasonable men in returning the verdict. Other assignments seem to me to be without merit.
I think the majority opinion should be receded from and the judgment appealed from affirmed on rehearing.