69 So.2d 789 (1953)
CARLS MARKETS, Inc.
v.
MEYER et al.
Supreme Court of Florida. Division B.
July 28, 1953.
Rehearing Denied December 8, 1953.
*790 Dixon, DeJarnette & Bradford and Duane Anderson, all of Miami, for appellants.
Nichols, Gaither, Green, Frates & Beckham, Miami, for appellees.
THOMAS, Justice.
Each of appellees obtained a judgment for damages resulting from the fall of appellee-wife in the super market operated by the appellant. The customer, as she had done for many months, shopped in the store and paid for the goods at the "check-out counter." She carried a paper bag of merchandise and a container of Pepsi-Cola. The counter was so arranged that a customer facing the cashier had the exit of the store at his back. When the appellee-wife paid her bill and turned toward the door she suddenly fell headlong.
There was evidence that she slipped in water mixed with vegetable leaves. Two witnesses testified that one of them had slipped just before appellee-wife was injured, while employees of the establishment testified there was no foreign matter at or near the place where the mishap occurred. The jury decided this point in appellees' favor so we will not invade the province of the fact-finding body. We will confine our consideration to the procedure followed by the court and challenged here by the appellant's four questions.
The first of these raises the propriety of the judge's refusal to charge the jury that it was appellees' burden to show knowledge on the part of appellant that foreign substance existed on the floor and that it had been there so long that the appellant was charged with notice of its presence. In substance the appellant requested that the jurors be charged that they could not indulge in speculation about the way in which the troublesome matter came upon the floor; that if it was placed there by a person other than an employee the defendant would be liable only if the plaintiff established its existence for a sufficient period for the defendant to have discovered it by the exercise of ordinary care.
The judge declined the request and on this subject simply charged the jury that "The test of the defendant's duties to take reasonable steps to keep the premises reasonably safe is not whether the defendant knew about a particular particle or matter on the floor, but whether it knew or should have known generally that the floor at the time and place in question was likely to have foreign matter on it, and *791 whether it took reasonable steps to remove the matter."
The judge's view about the inappropriateness of expounding the law on notice may be extracted from his comment during the conference with counsel on the proper charges to be given. He thought that "if there had been something on the floor which was not reasonable, subject to anticipation by the possessor, somebody, let us say, dropped, say, a rock on the floor or something unusual, why, then I think the doctrine of notice would be quite applicable." As we understand the ruling after studying these remarks in the light of the record, the judge felt that if an object dissociated from the operation of the store caused the damage the principle would be involved, otherwise not.
With this idea in mind we revert to the pleadings and the testimony. In their original complaint the appellees alleged that the defendant caused "a large quantity of wet, sloppy or slippery substance or particals [sic] of vegetables to be spilled or placed on the floor in said grocery * * directly in the path provided for the public" and that when the plaintiff-wife had trod the path she fell.
Had the plaintiffs based their case solely on the creation of a hazard by the operator of the store as they first alleged, we would be inclined to agree that there was no occasion for the charge about notice for if the plaintiffs could convince the jury that the dangerous condition was created by persons connected with the store the matter of notice was inconsequential.
In refutation of the appellant's argument appellees have referred to our opinion in Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720, 721, where it was held that the peculiar facts made it unnecessary for the plaintiff to meet the burden of establishing actual or constructive notice of a dangerous condition. In that case it was manifest that the defendant was selling bottled drinks, without providing a place for the deposit of empty bottles which could be expected therefore to roll around underfoot and become hazards to the unwary. In other words, the dangerous obstacles were the creations of the defendant who in effect was on notice as soon as the bottled refreshments were sold. We recognized a "place of amusement like a race track where patrons go by the thousand * * * and are permitted to purchase and drink bottled beverages * * * and set the empty bottles anywhere they may find space to place them" as an exception to the rule.
Although a "different rule" was held there to apply we think the underlying principle in that case would be common to this one if issue had been formed only on the initial complaint for the creator of a dangerous condition must by the very fact, know about and be responsible for his creation.
The other decision to which appellees cited us is Carl's Markets, Inc., v. DeFeo, Fla., 55 So.2d 182. We are impelled to point out, with profound deference to the author, that the opinion from which appellees generously quote was a special concurring opinion of one member of the Court in which no other member joined.
But, only a few days before the trial the plaintiffs were permitted to amend their complaint by averring that the defendant negligently allowed the quantity of slippery substance to remain on the floor and that it "had existed for a long enough period of time on the said floor that the defendant knew or by the exercise of reasonable care should have known of the existence of said condition * * *." By this count the element of notice was introduced and the judge was obliged to charge the jury, as defendant requested, that if it appeared that any person other than employees and agents of the defendant put the foreign matter on the floor liability on the part of the defendant would follow "only in the event that the plaintiff * * * established that the foreign matter had remained * * * for a sufficient length of time * * * for the defendant to have discovered the same by the exercise of ordinary care" and to have remedied the condition before the injured person fell.
*792 Although we feel that such a charge was not required by the issue joined on the original count it was necessary by the issue joined on the amended one and that failure to give it was error.
The next question is based on the injection of testimony about the insurance carried by the appellant. To determine whether error crept into the trial because of this reference we should give the prelude to the evidence the appellant insists was improper.
Two persons saw the appellee-wife fall. An investigator representing appellant's insurance carrier made an appointment with the witnesses, and called on them accompanied by a member of appellant's legal staff and a reporter. During the interview a statement of the witnesses was obtained.
Counsel for appellant apprehended that these witnesses were hostile so the judge was requested "to caution [them] * * * not to volunteer any information about insurance, unless * * * asked a direct question." The judge declined.
In the course of direct examination one of the witnesses was asked by appellees' attorney if someone solicited a statement about the accident and answered that an investigator called on him. Upon being asked if the investigator came from appellant's lawyer's office he replied "No, from the other office  from the insurance company. He told me he was the investigator." Before the witness could answer the next question, the jury was excused and the attorney for the appellant moved for a mistrial because of the reference to an insurance company. A rather extended colloquy among judge and attorneys followed and during it affidavits were presented by both parties to the action showing how the interview was arranged and what transpired while it was in progress.
In this conference, while the jury was absent, counsel for the appellees charged irregularities on the part of the investigator in his dealings with the witnesses, a man and his wife. An affidavit signed by both of them was presented to the court. According to their version of the meeting, the investigator, after introducing the attorney and the reporter, stated to the witnesses that he was doing them a favor by calling as he could subpoena them "down-town" and cause the husband to lose a day's work. He advised the wife to visit her mother a few days and thus avoid service of a subpoena. He told her "not to accept a subpoena in * * * [the husband's] name." He also encouraged the husband to avoid such service. He flattered the witnesses by calling their son handsome and promised that as soon as his expected child arrived he would bring the husband some cigars whether he smoked or not. This promise the husband construed as an offer to pay money.
In rebuttal appellant's attorney offered the affidavits of the investigator and the lawyer who accompanied him on the visit to the witnesses. The former related how he had arranged the interview at the request of the attorneys and how he had called on the witnesses for the purpose of introducing the attorney. He denied that he had directly or indirectly spoken about evading process. The attorney deposed that he had only taken a sworn statement from the witnesses about the incident precipitating the action.
The motion for mistrial was denied and the trial proceeded before the jury. The witnesses were allowed freely to refer to a named insurance company.
The questions, then, are whether prejudicial error occurred when the witnesses were given such latitude in referring to insurance; whether any error so committed was cured, or curable, by the charge of the court; whether the allusions were justified in view of the sworn statements, though contradicted, that the representative of the insurance company had attempted to influence the witnesses and to suppress their testimony by suggesting evasion of subpoena.
The judge's reason for permitting the inquiries must be gathered from his comment during the discussion with counsel. He remarked that the adjuster's conduct *793 presented a question of fact and if he attempted to influence the witnesses the jury should know about it "not as punishment to the defendant, but as a recognition." He added: "That is evidence of a weakness of one's case." And he further remarked: "If that is, in fact, what one has done  that one has attempted to keep his adversaries' witnesses from appearing and testifying  it is in a form an admission against the interest relating to the whole case."
Counsel for the appellees has directed us to decisions that the jury should hear of efforts by a party to intimidate witnesses, warp their testimony, or interfere with their expression of the truth. We do not expand on this principle of admissibility because of the fact that the insurance company mentioned in this case simply was not a party to the action.
We are committed to the rule that evidence of insurance carried by a defendant is not properly to be considered by the jury because that body might be influenced thereby to fix liability where none exists, or to arrive at an excessive amount through sympathy for the injured party and the thought that the burden would not have to be met by the defendant. Ryan v. Noble, 95 Fla. 830, 116 So. 766.
On the other hand, this court has held that references in the course of a trial to the defendant's insurance may become harmless by an appropriate charge from the court. Wall v. Little, 102 Fla. 1015, 136 So. 676; Rosenberg v. Coman, 134 Fla. 768, 184 So. 238; Ryder v. Plumley, 138 Fla. 378, 189 So. 422; Lambert v. Higgins, Fla., 63 So.2d 631.
But it does not follow that testimony about the insurance carried by a defendant may be introduced and admitted to considerable extent and afterward the effect upon the minds of the jurors can be completely neutralized by a charge from the court that the intelligence be disregarded.
The present case was not one where there was an inadvertent or volunteered reference to insurance, or an attempt to elicit testimony on that subject prompting an objection by counsel and a charge by the court to ignore the testimony. Instead, the comment about insurance was unrestrained because of a theory we think was unsound.
We adhere to the principle that if insurance is inadvertently mentioned, or information about insurance is volunteered, or even if such testimony is attempted to be introduced and the court upon objection immediately acts to prevent further transgression of the rule and to caution the jury to disregard the testimony the trial need not be discontinued. It is argued here, however, that we have an exception to the rule because the activity of the company's agent was chargeable to the defendant. As we have already written this was not a sound reason for admitting the proof because the company was not a defendant and, we think, the defendant was not bound by what the insurance company's adjuster did.
We hope that the reason for the conclusion is plain. Much mischief could be done to a defendant if the jury should become generous because of the idea that any amount assessed in the verdict would be the sole burden of the insurance carrier. If from over-zealousness the agent of an insurance company should act as it is claimed the adjuster acted in this matter and the misconduct were ascribed by the jury to the defendant the award might, for that reason, be greatly increased in which event the difference between the amount of the policy and an outsized verdict would become the burden of an insured who had no authority over or control of the agent.
Inasmuch as the matter is collateral and the insurance company is not a party to the suit we do not see how a representative of the company could by his action prejudice the defendant's case. There was no convincing proof that if the adjuster acted as the plaintiffs charged he was prompted by the defendant.
We disapprove the procedure and conclude that it amounted to reversible error.
*794 The judge undertook to have the jury disregard the testimony for one purpose and consider it for another. He charged: "Now, I permitted the inquiry into the matter of whether or not [the investigator] had attempted to prevent or discourage [the witnesses] from testifying for reasons which have nothing to do with injecting the fact that [the defendant] carries insurance. I believe that you would render exactly the same verdict whether you knew, as you now do, that [the defendant] carries insurance, as you would if you did not know that, and I have no reason to fear that you would violate your oaths as jurors and have that affect your verdict, but I think it is my duty, nevertheless, to state the matter bluntly and tell you straight out that it is your duty to disregard that fact and not have that influence your verdict in any particular." (Emphasis supplied.) So he made a genuine effort to eliminate from consideration by the jury the element of insurance, except, presumably, for the purpose of determining the effect upon the evidence of the effort of the company's agent to tamper with the witnesses.
We will not indulge in a discussion of the difficulty the jurors would have in making the separation. We say only that the testimony was inadmissible in the first instance; that its harmful effect was not cured by the charge eventually given; and that the controversy is not governed by the cases we have cited.
We find no such error in the court's charge on contributory negligence as would warrant a reversal on that score.
Over the objection of the defendant the plaintiff was permitted to read in evidence parts of the deposition of a man who at the time of the mishap managed defendant's store. The deponent was not subpoenaed to the trial and no explanation was given for failure to produce him. We are not aware of the existence of any of the circumstances detailed in the rule justifying the admission of this testimony. Common Law Rule 20, 30 F.S.A. Counsel for the appellees undertake to dismiss the matter by invoking the harmless error statute, Section 54.23, Florida Statutes 1951, and F.S.A. but we are not disposed to hold that the error was thus cured.
We conclude that for the reasons given the judgment should be reversed.
Reversed.
ROBERTS, C.J., and HOBSON and DREW, JJ., concur.