MATHEWS, Justice.
This is an appeal from the final judgment in a personal injury suit. It is alleged that the .plaintiff was an invitee in the defendant’s food market, and it was the duty of the defendant to use reasonable care to keep and maintain the premises and all parts thereof in a clean condition. It is then alleged that while shopping at the meat counter and “as Nancy Leonard, plaintiff, turned from said meat counter, ,she, without knowing same was there, stepped on a piece of waxed paper, which -defendant knew or should have known, was there, and who carelessly or negligently permitted said waxed paper to remain on the floor, which caused her to slip and fall upon said floor, * ' * *. ” Verdict was returned by the jury and final judgment was entered, based upon such verdict.
The sufficiency of the complaint was properly attacked and was overruled by the trial judge. During the progress of the trial, motion for directed verdict was overruled and after the trial, proper motion was made to set aside the verdict and final judgment and the motion for a directed verdict was renewed, all of which was denied.
It appears from the evidence which is undisputed that on September 6, 1951, between 8:00 and 8:30 P.M., plaintiff and her husband were on the way to a picture show and stopped by defendant’s food market to make some purchases. This store was a modern self-service food store, modernly designed, constructed and operated. While in the store plaintiff purchased a dozen eggs and at that time her husband was in a different aisle. She walked toward the self-service meat counter in the rear of the store. She was not looking at the floor of the store but was looking at the meat and the prices. When she arrived at the meat counter, she stayed there long enough to look at the prices and then, without looking at the floor or where she was going, she turned away from the meat counter and fell. She was wearing high-heeled women’s shoes at the time when her left foot slipped. At the time her husband was in a different place. She called to him. He came to her assistance. Neither she nor her husband saw the waxed paper involved in this case prior to the time she fell. When her husband came to her assistance, he picked up a piece of waxed paper. The husbapd then purchased some coffee after which they went to the front of the store and discussed the matter with the Assistant Manager.
There were no witnesses to this accident except the plaintiff and, partially, her husband who came to her assistance after she had fallen. The store manager examined the waxed paper minutely and his uncon-tradicted testimony is that it was not the type of paper used by the defendant for wrapping any of its products nor connected in any way in its business activities except the possibility that some other customer of the defendant could have dropped the paper on the floor. It could have been a piece of paper which package goods, such as, cookies or crackers are wrapped in by the manufacturer. In response to a question as to what sort of floor there was at the place where she fell, the plaintiff testified: “It is a terrazzo floor, which is very slippery on something like that.” She further testified that when she turned from the meat counter, “I found myself on the floor”, and that she was looking at the meat and had never seen the piece of paper until after she fell. The plaintiff was asked to describe the position in which she fell, and stated:
“A. My left foot went down under me, and I started sliding, and I kept holding onto the eggs, and I fell down on my side and buttocks, and I went down this way and wrenched my back and whole side. In trying to hold the eggs to keep them from breaking, I didn’t hit my head. I was this much from the floor.”
In the case of Messner v. Webb’s City, Fla., 62 So.2d 66, 67, the plaintiff was an invitee looking for a .straw hat. A “finishing nail” was on the floor in the aisle between two counters. The. court directed a verdict for the defendant. To paraphrase the holding in that case, there is no evidence in the case at bar to show how the paper *828 “came to be on the floor”. There is nothing in the evidence from which it can reasonably be inferred that the presence of the paper “was the result of some action of the defendant’s employees”. There is no evidence as to how long the paper “had been on the floor, nor that the defendant’s employees knew of its presence there,” nor is there any evidence from which it can reasonably be inferred that the paper “had been on, the floor a sufficient length of time to charge the defendant with constructive notice of its existence.”
In the case of Kraver v. Edelson, Fla., 55 So.2d 179, 180, the plaintiff sought damages on the theory that the defendants were negligent in permitting a cigar butt to remain on the terrace entering the hotel and that they knew of its presence, or, by the exercise of reasonable and ordinary care, should have known of its presence. In that case the testimony showed that a witness saw the doorman of the hotel run, several times, in and out of the hotel and pass over the spot where the cigar butt lay. There was plenty of light for him to see the cigar butt. It looked as if it has been trampled upon. It was messed up. The leaves hung and it looked as though it had been unraveled. Even in that case this Court held:
“ * * * to place upon managers and operators of hotels the duty and responsibility of having employees constantly on guard in the lobbies, around the steps, terraces and sidewalks leading into hotels, to observe such objects as a cigar butt as described in this case, would place upon them an intolerable burden.”
In the case of Marks v. Carl’s Markets, Fla., 62 So.2d 739, the lower court granted motion for directed verdict for the defendant. The defendant was engaged in conducting a market in which it sold, among other things, green beans. The beans were stacked high. The record showed that the place of business was a Very attractive one, that it was difficult to take beans from bin to bin without dropping some on the floor, that beans were repeatedly dropped on the floor. There was some testimony that the floor had not been swept for more than an hour at the time the plaintiff slipped. This Court upheld the judgment for the defendant based upon the directed verdict by the lower court. In that case it was not disputed that the defendant was engaged in the business of selling beans which were visible to everyone. The place had not been swept for more than an hour. In the case at bar the defendant was not engaged in selling this type of waxed paper involved in this case. It did not know that the waxed paper was on the floor and there are not' sufficient facts alleged or shown by the evidence which would justify any conclusion that the defendant knew or should have known that the waxed paper was on the floor or how long it had been on the floor.
In the case of Bowles v. Elkes Pontiac Co., Fla., 63 So.2d 769, 772, we affirmed the trial judge in dismissing the suit and entering final judgment where the plaintiff charged that she was an invitee in an automobile showroom of the defendant and that the entrance to the same was dangerous because of a three-inch drop-off located about eighteen inches inside the entrance door. The color of the step was the same color as the floor covering. In that case we held:
“Any person of ordinary intelligence entering a door to a building or a showroom, such as that shown in this case, has the duty and obligation to use ordinary care for his own safety and to look and see where he is going. There is no allegation in this complaint that the plaintiff looked, or took any other precaution, to see the condition which- existed before she entered.”
In the case at bar the floor was slippery, and known by the plaintiff to be “very slippery”. The waxed paper was almost transparent. The plaintiff did not look at the floor and did not take any other precaution for her own safety to ascertain the condition of the floor when she turned to walk from the meat counter.
*829 Reversed, with directions to set aside the judgment and take other proceedings in accordance with this opinion.
ROBERTS, C. J., DREW, J., and MUR-PHREE, Associate Justice, concur.