**Marie E. POGUE and William T. Pogue, Appellants,**

v.

**The GREAT ATLANTIC & PACIFIC TEA COMPANY, Appellee.**

No. 16254.

United States Court of Appeals Fifth Circuit.

April 2, 1957.

Rehearing Denied May 10, 1957.

Paul G. Hyman, R. E. Hodges, Miam , Fla., Britton, Hodges & Hyman, Miami, Fla., for appellants.

Goble D. Dean, Miami, Fla., Brown, Dean, Adams & Fischer, Miami, Fla., for appellee.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

RIVES, Circuit Judge.

In an action by a customer against a storekeeper to recover for injuries suffered when the customer slipped and fell in the store, one district judge, Honorable John W. Holland, denied defendant's motion for summary judgment on November 16, 1953, but two and one-half years later, on June 19, 1956, another district judge, Honorable Joseph P. Lieb, entered summary judgment for the defendant. From that judgment this appeal is prosecuted.

In reviewing the summary judgment, we need consider only that evidence most favorable to the party against whom the judgment was rendered, giving that party the benefit of all favorable inferences that may reasonably be drawn from the evidence.[1] So considering the record, the appellee does not controvert, and we find supported, the following facts as stated in appellants' brief:

"On December 24, 1951, the defendant owned and operated a supermarket in Coral Gables, Florida. On that date the plaintiff wife went into such market as a cus-

---

1. As said by Professor Moore, "Since it is not the function of the trial court to adjudicate genuine factual issues at the hearing on the motion for summary judgment, in ruling on the motion all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion." 6 Moore's Federal Practice, 2d ed., Para. 56.15(3), pp. 2124–2125. Citing inter alia Gray Tool Company v. Humble Oil & Refining Co., 5 Cir., 186 F.2d 365.

tomer. This was the first time that she had ever been in this store. From the point of entry to the store aisle approximately 20 feet wide extended lengthwise across the front of the store with the entrance into the shopping area at the end opposite from the outdoor entrance. Nine check out booths and exit aisles were located along the inner side of such aisle. All customers entering the store were required to pass through this front aisle in front of the check out booths in order to pass into the store proper.

"The regular and customary operation of the store required that the customers would secure a basket, push it through the store placing their purchases therein and then check out by pushing these baskets through the exit aisles adjacent to the check out booths. Defendant's employees removed the purchased articles from the baskets, totaled the bill, collected therefor, and placed the articles in paper sacks.

"Fresh vegetables, including lettuce and carrots were not packaged, and pieces of such vegetables frequently broke off in the baskets and remained there after the purchases had been removed.

"The exit aisles were narrow and a customer could not pass out of them unless and until the basket was first pushed out. This was sometimes done by the customer, but often by an employee of defendant. After the baskets were pushed out of the exit aisle, they were often permitted to accumulate in the main entrance aisle across the front of the store.

"As they were pushed out into the main entrance aisle, the baskets often bumped into and against other baskets which had accumulated there. The bumping together of the baskets frequently caused pieces of vegetables remaining therein to fall onto the floor of the main entrance aisle. As a result of the customary operations of the defendant, the aisle was often littered with such pieces of vegetables. The manager of the store was familiar with this condition and had instructed the checkers and bag boys to pick up the pieces of vegetables remaining in the basket.

"The number of baskets permitted to accumulate in the main entrance aisle and number of pieces of vegetables that accumulated on the floor of such aisle, were directly proportionate to the amount of business the store was doing on any given day. December 24, 1951, the day of the injury, was an extremely busy day."

It further appears, that on that day at about 1:45 P.M., the plaintiff wife, 70 years of age, entered the store as a customer and what happened when she was about halfway across the main entrance aisle, walking toward a check out booth which was not in operation, is best described in her own words:

"Well, when I first went into the store I looked at the location and how things were. I wanted to locate the bakery department. I saw the vegetable department there, and I saw the stile—the entrance to the main part of the store—but I didn't want to go that far down. I was looking for a place where there was no checking, so I could go through there and locate the bakery department and pick up the pie if they had one. I was about halfway in when I slipped on this lettuce and carrot tops—I found them clinging to my foot afterwards —and when I first slipped on it, it threw me backwards, but I caught myself. I felt that I had injured my back at the time through my running forwards on my toes, to catch myself. Then I put my right foot down again flat, thinking that perhaps I had lost whatever it was I had stepped on, and I slipped again and went backwards right into some baskets, and I fell from one

basket to the other, and then onto the floor."

She was badly injured.

■ Apparently Judge Lieb accepted the argument of defendant's counsel, renewed upon appeal, that during the two and one-half years after Judge Holland had denied the defendant's first motion for summary judgment, "considerable new Florida law was in effect." In effect, the position of the defendant, appellee, is that before liability can be fastened on the storekeeper he must have had notice or knowledge of the presence of the debris on the floor, and that to establish notice or constructive knowledge, there must be evidence that it had been there a sufficient time for the storekeeper, in the exercise of reasonable care and diligence, to have found and removed it. The plaintiff, appellant, concedes that, as to the particular lettuce leaf and carrot tops, no such evidence was available. She relies instead upon evidence tending to show that the storekeeper, by his method of operation, had created a dangerous condition which caused the presence on the floor of the foreign material in question, and that, under such circumstances, the plaintiff is not required to introduce further proof.

Similar contentions were presented to the Florida Supreme Court in 1948 in an action for personal injuries brought against the operator of a dog race track, and were thus answered by the Court:

"The motion for an instructed verdict appears to have been made and granted on the theory that the evidence in a case like this must show that the owners of the race track or their agents must have had actual or constructive knowledge of the presence of the bottle from which plaintiff was injured, and that if constructive knowledge is relied on, the evidence must show that it had been there a sufficient time for the owners, in the exercise of reasonable care and diligence, to have found and removed it. They con-

tend that the evidence in this case is completely devoid of any such showing.

"It is true that such a rule has been imposed on stores, banks, shops and other business places of that character, but we think a different rule applies to a place of amusement like a race track where patrons go by the thousand on invitation of the proprietors, and are permitted to purchase and drink bottled beverages of different kinds and set the empty bottles anywhere they may find space to place them. It is charged that the day that plaintiff was injured was the last day of the racing season, that the crowd was large and that many patrons were directed to sit in the exit aisles, drink from bottles and deposit the empty bottles anywhere they could find space for them.

"Places of amusement where large crowds congregate are required to keep their premises in reasonably safe condition commensurate with the business conducted. If the owner fails in this, and such failure is the proximate result of injury to one lawfully on the premises, compensatory damages may be recovered if the one injured is not at fault. J. G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45, text 47, Ann.Cas.1913C, 564. One operating a place of amusement like a race course where others are invited is charged with a continuous duty to look after the safety of his patrons. Both sanitary and physical safety of its patrons require that receptacles be provided for bottles and that they be so placed.

"We do not mean to imply that they are insurers of the safety of their patrons, but we do say that reasonable care as applied to a race track requires a higher degree of diligence than it does when applied to a store, bank or such like place of business. Numerous cases sup-

port this conclusion. * * *."
Wells v. Palm Beach Kennel Club,
160 Fla. 502, 35 So.2d 720, 721.

In 1951 in the case of Carl's Markets v. DeFeo, Fla., 55 So.2d 182, Mrs. DeFeo had received her injuries from slipping on a string bean while shopping in the defendant's self-service grocery store. Upon original hearing, a judgment for the plaintiff was reversed, apparently because the Florida Supreme Court considered both that the evidence was insufficient to prove negligence, and that the plaintiff was guilty of contributory negligence, as a matter of law. Rehearing was granted and the judgment affirmed per curiam without opinion, except for a special concurring opinion in which Mr. Justice Terrell expressed the view that the rule of Wells v. Palm Beach Kennel Club, supra, should be applicable, stating:

"In Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720, we rejected the reasonable care rule which appellant seeks to invoke in this case for reasons not materially different. True the patron in that case slipped on a bottle in the aisle of the grand stand at a race course. It was not shown how long the bottle had been there, but we held that the diligence required of the proprietor must be comparable to that necessary under the circumstances to prevent accidents. In this case the evidence shows a complete lack of that degree of care, not alone in looking after the floors, but in the construction of the vegetable bins. It is shown that the vegetable bins were overfilled and it is admitted that the bean might have been on the floor at least fifteen minutes at a busy time of the day. Moone v. Kroger Grocery & Baking Co., Mo. App., 148 S.W.2d 628; Pabst v. Hillman's, 293 Ill.App. 547, 13 N.E. 2d 77; Wells v. Palm Beach Kennel Club, supra. In these and many other cases the court rejected the contention that liability turns on proof that the bean or other substance had been on the floor long enough to put the defendant on notice. Given any other interpretation the rule becomes shop worn and the law 'goes to seed.' " Carl's Markets v. DeFeo, supra, 55 So.2d at pages 185, 186.

In his special concurring opinion, Mr. Justice Terrell further discussed at length the operation of the modern food store of the self-serving, supermarket variety, and advocated the application to it of a new and different rule of care, in part saying:

"In view of these factors I think something more specific than the reasonable care rule must be imposed on the proprietor of the self serving grocery store. In fact, I think that in the light of the disparity between the modern food market and the old time grocery, it is out of the question to contend that they are governed by the same rule of care. They are so different in every essential aspect that I think it would be as reasonable to contend that the proprietor of a horse drawn vehicle would be governed by the same rule of care as the proprietor of a motor driven vehicle." 55 So. 2d at page 185.

In 1953 Mr. Justice Terrell dissented when the Florida Supreme Court affirmed per curiam a directed judgment for the defendant in a case where the defendant had slipped on a green bean or beans which might have been dropped on the floor from the method of operation of the defendant's store. Marks v. Carl's Markets, Fla., 62 So.2d 739. That case was followed in 1954 by Carl's Market v. Leonard, 73 So.2d 826, where the Florida Supreme Court held that the evidence was not sufficient to show that the storekeeper knew or could have known that some wax paper was on the floor, or how long it had been there, and that a shopper who knew that the floor was slippery, but took no precaution for her own safety, could not recover.

Meanwhile, however, in 1953 in Carl's Markets v. Meyer, 69 So.2d 789, the

Florida Supreme Court had approved as applicable to a storekeeper the principle underlying the opinion in Wells v. Palm Beach Kennel Club, supra, saying:

" * * * In their original complaint the appellees alleged that the defendant caused 'a large quantity of wet, sloppy or slippery substance or particals [sic] of vegetables to be spilled or placed on the floor in said grocery * * * directly in the path provided for the public' and that when the plaintiff-wife had trod the path she fell.

"Had the plaintiffs based their case solely on the creation of a hazard by the operator of the store as they first alleged, we would be inclined to agree that there was no occasion for the charge about notice for if the plaintiffs could convince the jury that the dangerous condition was created by persons connected with the store the matter of notice was inconsequential.

"In refutation of the appellant's argument appellees have referred to our opinion in Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720, 721, where it was held that the peculiar facts made it unnecessary for the plaintiff to meet the burden of establishing actual or constructive notice of a dangerous condition. In that case it was manifest that the defendant was selling bottled drinks, without providing a place for the deposit of empty bottles which could be expected therefore to roll around underfoot and become hazards to the unwary. In other words, the dangerous obstacles were the creations of the defendant who in effect was on notice as soon as the bottled refreshments were sold. We recognized a 'place of amusement like a race track where patrons go by the thousand * * * and are permitted to purchase and drink bottled beverages * * * and set the empty bottles anywhere they may find space to place them' as an exception to the rule.

"Although a 'different rule' was held there to apply we think the underlying principle in that case would be common to this one if issue had been formed only on the initial complaint for the creator of a dangerous condition must by the very fact, know about and be responsible for his creation.

"The other decision to which appellees cited us is Carl's Markets, Inc. v. DeFeo, Fla., 55 So.2d 182. We are impelled to point out, with profound deference to the author, that the opinion from which appellees generously quote was a special concurring opinion of one member of the Court in which no other member joined.

"But, only a few days before the trial the plaintiffs were permitted to amend their complaint by averring that the defendant negligently allowed the quantity of slippery substance to remain on the floor and that it 'had existed for a long enough period of time on the said floor that the defendant knew or by the exercise of reasonable care should have known of the existence of said condition * * *.' By this count the element of notice was introduced and the judge was obliged to charge the jury, as defendant requested, that if it appeared that any person other than employees and agents of the defendant put the foreign matter on the floor liability on the part of the defendant would follow 'only in the event that the plaintiff * * * established that the foreign matter had remained * * * for a sufficient length of time * * * for the defendant to have discovered the same by the exercise of ordinary care' and to have remedied the condition before the injured person fell.

"Although we feel that such a charge was not required by the issue joined on the original count it was necessary by the issue joined on the amended one and that failure to

give it was error." Carl's Markets v. Meyer, 69 So.2d at pages 791, 792.

We have quoted at length from the opinion in that case in order to make it clear that proof of notice or knowledge of the presence of the particular foreign matter on the floor was required only because of the condition of the pleadings in that case, and would not have been required by the issue joined on the original count.

The reference in that opinion to Mr. Justice Terrell's special concurring opinion in Carl's Markets, Inc. v. DeFeo, supra, was obviously not for the purpose of denying applicability to storekeepers of the rule announced in Wells v. Palm Beach Kennel Club, supra, but was probably for the purpose of denying responsibility of the Court for Mr. Justice Terrell's advocacy of a new and different rule of care to be imposed on the proprietor of a modern, self-serving grocery store.

The differing facts of the two cases may distinguish Carl's Markets v. Meyer, supra, from Carl's Markets v. Leonard, supra. Whether so or not, in Brisson v. W. T. Grant Co., 79 So.2d 771, decided in 1955, the last case found in which the Florida Supreme Court has written an opinion on the subject, it has definitely held applicable against a storekeeper the underlying principle of Wells v. Palm Beach Kennel Club, supra. In that case, a customer sued for injuries sustained when she fell over a seat protruding into the aisle of defendant's store. The lower court entered judgment on a directed verdict for the defendant, on the theory that the plaintiff had failed to establish by all the evidence either that the seat had been raised in the extended position by an agent or an employee of the defendant or that it had been so elevated for a sufficient length of time to have furnished notice to the defendant. The Florida Supreme Court reversed with directions to grant the plaintiff's motion for new trial, saying in part:

"If this were a case involving a fall because of a failure to remove a foreign substance whose presence on the floor was unexplained or cases of that kind, the lower court would probably have been correct in his conclusion and the position taken by appellee would be sound. Such, however, is not the case.

"The rule of negligence applicable to the facts alleged in the complaint is that where the possibility or probability of consequence can be reasonably foreseen, anticipated, or prevented, an actor who does not use ordinary and reasonable care to avoid such consequences will be deemed guilty of negligence. The rule is stated in 38 Am.Jur., page 743, Para. 85, as follows:

" 'However, one who causes or authorizes the use of a dangerous instrument or article in a negligent manner or under such circumstances that he has reason to know it is likely to produce injury, is responsible for the natural and probable consequences of his act to any person injured who is not himself at fault.'

Illustrative of such negligence is that appearing in Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720. While that case related to a condition existing at a place of amusement, the principle upon which it was decided is applicable here." Brisson v. W. T. Grant Co., supra, 79 So.2d at pages 772, 773.

Appellee has little to say against the soundness in principle of the simple doctrine that the creator of the dangerous condition is charged with notice of the danger caused by his own creation, as illustrated by such cases from other jurisdictions as Rankin v. S. S. Kresge Company, D.C.N.D.W.Va., 59 F.Supp. 613, affirmed in S. S. Kresge Company v. Rankin, 4 Cir., 149 F.2d 934; Moone v. Kroger Grocery & Baking Co., Mo.App., 148 S.W.2d 628; and Pabst v. Hillman's, 293 Ill.App. 547, 13 N.E.2d 77. Instead, the appellee argues that the Florida Supreme Court has imposed a more lenient rule of care against storekeepers, saying in brief:

"Perhaps this is because the state of Florida has experienced such a rash of 'slip and fall' cases because of the transient and fun seeking population so prevalent in this state. It is a well recognized fact that vacationers and other transients in this area are very prone to 'slip and fall' accidents, with the obvious intent of procuring for themselves some sort of settlement value in order to aid in meeting the expense of their vacation."

Our full review of the Florida cases fails to convince us that the Supreme Court of Florida has adopted any such suspicious and inhospitable view toward the tourist trade. To the contrary, it has made it extremely clear that the rule of Wells v. Palm Beach Kennel Club, supra, is applicable against a storekeeper.

Continuing to support the propriety of the summary judgment in its behalf, the appellee further argues that, under Florida law there was not sufficient circumstantial evidence to justify a submission of the case to the jury; that the evidence failed to exclude the presence of the foreign material on the floor by means of some agency not under control of the defendant or for which the defendant was not responsible; that the lettuce leaf and carrot tops may have been brought from outside the store, or may have been deposited on the floor by children, customers, or various other means not within the defendant's control. The appellee urges upon us that the Florida Supreme Court has held that, in order for circumstantial evidence to be sufficient for jury consideration in a negligence case, "the rule is that the particular inference of the existence of the fact relied on as arising from the circumstances established by the evidence adduced, shall outweigh all contrary inferences to such extent as to amount to a preponderance of all of the reasonable inferences that might be drawn from the same circumstances." King v. Weis Patterson Lumber Co., 124 Fla. 272, 168 So. 858, 859. Quoted in Voelker v. Combined Ins. Co. of America, Fla., 73 So.2d 403, 405; see also City of Jacksonville v. Waldrep, Fla., 63 So.2d 768.

■■ We do not think that we should seek to discover how that apparently unique doctrine of Florida law should be applied to the evidence in this case, for we consider it purely procedural and without application to a case tried in the Federal Court. The extent to which state law controls was well stated by Professor Moore in 5 Moore's Federal Practice, 2d ed., Para. 38.10, p. 102:

"The elements of plaintiff's prima facie case, or of defendant's defense, must be determined by applicable local law in a case involving only nonfederal matters. But the sufficiency of certain evidence to raise a question of fact for the jury, or for the court where trial is without jury, should not be controlled by state law."

The kind of jury trial to which the parties are entitled in Federal Courts under Rules 38 and 39 of the Federal Rules of Civil Procedure, 28 U.S.C.A., is that preserved by the Seventh Amendment to the Constitution, to which the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is of course subservient. Wright v. Paramount-Richards Theatres, 5 Cir., 198 F.2d 303, 305; Reuter v. Eastern Air Lines, 5 Cir., 226 F.2d 443, 445; Reynolds v. Pegler, 2 Cir., 223 F.2d 429, 433, 434.

■ We think that the evidence in this case was such that fair-minded men could draw the inference that the piece of lettuce leaf and carrot tops on the floor came from within the appellee's store and from some agency under the control of the appellee, and that there was not such a complete absence of probative facts as justified the granting of a summary judgment for the defendant. Compare Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916.

This action was commenced on December 29, 1952 to recover for injuries alleged to have been sustained on December 24, 1951. The plaintiff herself requested the granting of one continuance in August, 1955. There has not yet been a trial on the merits. Without intending to criticize the court or the parties, we express the view that, upon remand, every effort consistent with justice to each of the parties should be exerted to offer an opportunity for trial of this case upon its merits. The judgment is reversed and the cause is remanded.

Reversed and remanded.

TUTTLE, Circuit Judge (dissenting).

As is shown by the statement of facts in the majority opinion taken from appellant's brief, the vegetable particle on which appellant slipped was dropped on the floor not by appellee or its agents but by other customers. On this state of facts I think the Florida law is still as stated in Carl's Markets v. Meyer, 69 So.2d 789 at pages 791–792, quoted in the opinion. There the court drew a distinction between the placing of trash on the floor of the store by the owner or his agents and the dropping of such trash by others. In the latter instance the court said it must be shown that the store owner had actual or constructive notice. The case of Brisson v. W. T. Grant Co., 79 So.2d 771, does not change this rule since the cause of the injury there was a seat protruding into the aisle of defendant's store, a condition of which the defendant was bound to have had notice. The adoption of the Palm Beach Kennel Club doctrine in that type of case is logical because in the Palm Beach Kennel Club case the injury was alleged to have been due to the action of the Club in permitting the placement of bottles in the aisles, thus giving immediate constructive notice of the existence of a dangerous condition.

I think that the rule in Florida still requires the showing of negligence, and absent any evidence of notice, or notice implied from the length of time the particles were on the floor, no negligence can be inferred by the jury in this type of case.

I would affirm.

Rehearing denied; TUTTLE, Circuit Judge, dissenting.