IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

MARIE LYNN HARRISON AND
DEBORAH HARRISON,

      Appellants,

  v.

                                    Case Nos.  5D16-1037
                                               5D16-2552

WILLIAM GREGORY, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF JOSHUA RAIM KALPHAT LOPEZ,
AND BASICH, INC.,

      Appellees.

_____/

Opinion filed July 7, 2017

Appeal from the Circuit Court
for Orange County,
Margaret H. Schreiber, Judge.

Angela C. Flowers, of Kubicki Draper,
Ocala, for Appellant.

David C. Beers and James Gordon, of
Beers and Gordon, P.A., Oviedo, for
Appellee, William Gregory, as Personal
Representative of the Estate of Joshua
Raim Kalphat Lopez.

No Appearance for Appellee, Basich, Inc.

LAMBERT, J.

      In this wrongful death case, Marie Lynn Harrison and Deborah Harrison

("Appellants") appeal a final judgment entered against them and in favor of William

Gregory, as personal representative of the estate of Joshua Raim Kalphat Lopez

("Appellee"). Lopez ("Decedent") died as a result of injuries that he sustained when his motorcycle collided with a motor vehicle driven by Co-Appellant, Marie Harrison, at an intersection located in Orlando, Florida. Appellants also appeal the separate "Final Cost Judgment" entered against them and in favor of Appellee.[1]

The issue of liability or fault for the accident was vigorously disputed at trial, with both sides presenting significantly divergent testimony, from lay witnesses and expert witnesses, as to how and why the accident occurred, including whether Decedent was under the influence of cocaine or marijuana to the extent that his normal faculties were impaired at the time of the accident. The jury determined that both Marie Harrison and Decedent were negligent and a legal cause of the loss or damage to Appellee, assessing 75% fault to Harrison and 25% fault to Decedent for this accident. The jury awarded significant damages to Decedent's parents for their respective mental pain and suffering, plus damages to Appellee for funeral expenses and medical expenses. Appellants raise three substantive grounds for reversal, which we will address *in seriatim*. Concluding that the cumulative effect of the errors at trial materially prejudiced Appellants, we reverse the final judgments and remand for a new trial.

Ruben Ortiz Testimony

While she was still at the accident scene, Marie Harrison told her twin sister that "I just killed a kid."[2] Appellants filed a pretrial motion in limine to exclude this statement at trial, arguing that it was not relevant and that even if it were marginally relevant, the statement was nevertheless inadmissible pursuant to section 90.403, Florida Statutes

---

[1] The two appeals were consolidated sua sponte by the court.

[2] Decedent was twenty-two years old.

2

(2012), because its probative value was substantially outweighed by the danger of unfair prejudice. Following a hearing, the trial court agreed, concluding that "the tendency of that statement is to suggest an improper basis to the jury for resolving the matter" and that the statement "doesn't necessarily imply fault."

On the morning of trial, Appellee's counsel advised the court and Appellants' counsel that he intended to call Ruben Ortiz to testify. Ortiz had seen Decedent operate his motorcycle just prior to the accident and was at the scene when he heard Marie Harrison state on her cell phone that "I think I killed somebody." Appellants objected to the admissibility of this statement, arguing that because the statement was essentially identical to Harrison's statement to her sister that the court had previously excluded pursuant to section 90.403, it would be patently inconsistent to now allow Ortiz to testify to, essentially, the same statement. The trial court did not change its earlier ruling on the inadmissibility of Harrison's statement to her sister; nevertheless, it permitted Ortiz to testify as to this second statement. We review this evidentiary ruling under the abuse of discretion standard. *LaMarr v. Lang*, 796 So. 2d 1208, 1209 (Fla. 5th DCA 2001).

Section 90.403 provides that "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." "'Unfair prejudice' has been described as 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *McDuffie v. State,* 970 So. 2d 312, 327 (Fla. 2007) (quoting *Brown v. State,* 719 So. 2d 882, 885 (Fla. 1998)). The trial court correctly ruled that, under the facts of this case, Harrison's statement to her sister was inadmissible under section 90.403. Therefore, we conclude that the court abused its

discretion in not similarly excluding Ortiz's testimony regarding Harrison's essentially identical statement.

<u>References to Insurance</u>

Prior to trial, the parties stipulated to the entry of an order in limine to prevent the mentioning of the "existence of insurance" before the jury. During the course of the trial, Appellee's counsel questioned his accident reconstruction expert witness about the inspection of Marie Harrison's motor vehicle and specifically asked the witness where the vehicle had been taken following the collision.[3] Appellee's expert responded that it had been transported to a storage yard by "the insurance company." Appellants moved for a mistrial. Outside the presence of the jury, the court admonished the witness to make no further comment about insurance, but it denied Appellants' motion. Neither this witness nor counsel mentioned insurance again.

"The long-standing purpose of excluding improper references [to] a defendant's insurance coverage in civil proceedings is to preclude jurors from affixing liability where none otherwise exists or to arrive at excessive amounts [of damages] through sympathy for the injured party with the thought that the burden would not have to be borne by the defendant." *Melara v. Cicione*, 712 So. 2d 429, 431 (Fla. 3d DCA 1998) (citing *Carls Mkts., Inc. v. Meyer*, 69 So. 2d 789, 793 (Fla. 1953)). Here, the order in limine was violated. Normally, because this one comment regarding insurance was not pervasive, we likely would have concluded that there was no abuse of discretion by the trial court in denying Appellants' motion for mistrial. *See Ricks v. Loyola*, 822 So. 2d 502, 506 (Fla.

---

[3] The record does not indicate the significance of the vehicle's location after being moved from the accident scene.

2002) (holding that an appellate court reviews a trial court's rulings on motions for mistrial under the abuse of discretion standard of review).  However, as we explain, this comment about insurance[4] in conjunction with the earlier error in admitting Ortiz's testimony and the prejudicial comment of Appellee's counsel during closing argument, discussed below, requires reversal.

Improper Closing Argument

Appellants presented evidence and argument at trial that Decedent's impairment by the use of cocaine and marijuana was a causal factor for the accident.  On this issue, section 768.36, Florida Statutes (2012), provides, in pertinent part:

> (2)    In any civil action, a plaintiff may not recover any damages for loss or injury to his or her person or property if the trier of fact finds that, at the time the plaintiff was injured:
>
> (a) The plaintiff was under the influence of any alcoholic beverage or drug to the extent that the plaintiff's normal faculties were impaired . . . ; and
>
> (b) As a result of the influence of such alcoholic beverage or drug the plaintiff was more than 50 percent at fault for his or her own harm.[5]

---

[4] Appellants point out that there were multiple references to insurance during trial.  On two occasions, the principal and an employee of the co-defendant, Basich, Inc., separately mentioned insurance during testimony.  As the questions posed by Appellee's counsel to these witnesses were not intended to elicit insurance information, these comments, over which Appellee had no control, do not justify reversal.  Finally, two separate jurors provided two written questions for witnesses regarding insurance, but the trial court did not allow the questions to be asked and did not advise the other members of the jury about those questions.

[5] Though not raised by either party, this statute providing an intoxication defense applies in a wrongful death action.  *See Griffis v. Wheeler*, 18 So. 3d 2, 4-5 (Fla. 1st DCA 2009).

On the verdict form, this determination of drug impairment was presented for resolution as interrogatory questions 5 and 5(a), which the jury was to consider after it answered the prior four questions on the verdict form. Specifically, the first two questions on the verdict form asked the jury to determine whether there was negligence on the part of Marie Harrison that was a legal cause of loss, injury, or damage to Appellee and, if so, whether there was also negligence on Decedent's part that was a legal cause of loss, injury, or damage. As previously indicated, the jury answered "yes" to both questions. Question 4 of the verdict form[6] then directed the jury to state the percentage of fault that it charged to Harrison and that it charged to Decedent.

The verdict form next instructed the jury that if it had assigned a percentage of fault to Decedent that is 50% or less, that it was to skip questions 5 and 5(a), but that if it had assigned a percentage of fault to Decedent greater than 50%, then it was to answer questions 5 and 5(a) before answering the remaining questions on the verdict form.[7]

Questions 5 and 5(a) on the verdict form stated:

5. If you attributed any percentage of fault to [Decedent] in question 4 above was some or all of that fault caused by [Decedent] being under the influence of cocaine and/or marijuana to the extent that his normal faculties were impaired?

Yes: _____    No: _____

(a) As a result of that influence of cocaine and/or marijuana, was [Decedent] more than fifty percent (50%) at fault for his own harm?

Yes: _____    No: _____

---

[6] Question 3 of the verdict form pertained to an issue of vicarious liability that is not pertinent to this appeal.

[7] The remaining questions related to various elements of damages.

6

In his closing argument, Appellee's counsel recommended how the jury should approach filling out the verdict form during deliberation. Counsel suggested that instead of answering the questions on the verdict form in the order instructed on the form, the jury should skip the first four questions on the verdict form and go directly to question 5. Counsel argued that the answer to questions 5 and 5(a) should "very simpl[y]" be "no." Counsel then inexplicably advised the jury as follows: "By the way, 50 percent or more at fault, there's no recovery." Appellants' counsel immediately objected and moved for a mistrial. The trial court sustained the objection, correctly ruling that it was improper for counsel "to let [the jury] know the mathematical effect of a finding of a percentage of fault." The court issued a curative instruction directing the jury to follow the instructions on the verdict form regarding the manner in which it was to proceed in filling out the verdict form and also admonishing the jury that the attorneys do not give the instructions on the law. The court deferred ruling on the motion for mistrial but later denied the motion after the jury returned its verdict.

The purpose of closing argument is to assist the jury with its application of the law that the judge has given to the facts of the case. *Murphy v. Int'l Robotic Sys., Inc.*, 766 So. 2d 1010, 1028 (Fla. 2000) (quoting *Hill v. State*, 515 So. 2d 176, 178 (Fla. 1987)). "Moreover, closing argument must not be used to 'inflame the minds and passions of the jurors so that their verdict reflects an emotional response . . . rather than the logical analysis of the evidence in light of the applicable law.'" *Id.* (quoting *Bertolotti v. State*, 476 So. 2d 130, 134 (Fla. 1985)). While Appellee's counsel was entitled to argue to the jury that the evidence presented did not establish that Decedent was impaired by cocaine or marijuana at the time of the accident and could properly argue for a significant damage

7

award for the parents for their understandable trauma resulting from the death of their son, it was highly improper for counsel to advise the jury as to the potential adverse effect to the parents of the jury's potential factual findings regarding comparative fault. Frankly, we can conceive of no reason why counsel would advise the jury that Decedent's parents would not receive any money if it found Decedent to be greater than 50% at fault, other than to deliberately and improperly evoke sympathy and compassion for Decedent's parents.

Cumulative Error

Lastly, Appellants argue that while any one of the aforementioned errors, by itself, is sufficient to justify a reversal, at a minimum, the errors collectively require a new trial. A cumulative error claim asks an appellate court to "evaluate claims of error cumulatively to determine if the errors collectively warrant a new trial." *Rogers v. State*, 957 So. 2d 538, 553 (Fla. 2007) (citing *Suggs v. State*, 923 So. 2d 419, 441-42 (Fla. 2005)). In analyzing the entire record, we conclude that Appellee has not shown that the cumulative effect of these errors is harmless. *See Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1256 (Fla. 2014) (holding that the harmless error analysis in civil cases requires that "the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict").

Accordingly, we reverse the final judgment awarding damages in favor of Appellee and remand for a new trial. Furthermore, because we have reversed this final judgment, we must also reverse the separate final cost judgment. *See Thornburg v. Pursell*, 476 So. 2d 323, 324 (Fla. 2d DCA 1985).

REVERSED and REMANDED for new trial.

ORFINGER, J., and HERNDON, L., Associate Judge, concur.