59 N.J. Super. 41 (1959)
157 A.2d 133
ANNA TORDA, PLAINTIFF-APPELLANT,
v.
GRAND UNION COMPANY, A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1959.
Decided December 17, 1959.
*42 Before Judges GAULKIN, SULLIVAN and FOLEY.
Mr. Bruce H. Losche argued the cause for plaintiff-appellant (Mr. Charles C. Shenier, attorney).
Mr. William R. Morrison argued the cause for defendant-respondent (Messrs. Morrison, Lloyd & Griggs, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
The Law Division granted defendant's motion for involuntary dismissal at the close of plaintiff's case and she appeals.
The judicial action under review must be appraised in the light of the familiar principles that, on a motion directed to the sufficiency of a case the facts must be viewed most favorably to plaintiff's contention, and that if any reasonable and legitimate inference of negligence may be drawn therefrom the case must be submitted to the jury. Corollarially, a jury question also arises if there are any facts in evidence which, if not answered, would justify men of ordinary reason and fairness to find in plaintiff's favor. Shellhammer v. Lehigh Valley R. Co., 14 N.J. 341, 345 (1954).
Plaintiff, a customer of the defendant's supermarket, testified that on August 3, 1957 at about 11:20 A.M. she was pushing a cart in the vicinity of a self-service vegetable rack or bin, when she slipped on something which she did not see, fell and was injured. A short time later while leaving the store she noticed that there was water on the floor at the place where she had fallen. Mary Thomas, another *43 customer, testified that she was directly behind plaintiff, and that as plaintiff came to the vegetable counter she fell to the floor with "a thud." Then:
"Q. Did you see what she fell on?
A. After she got up I did.
Q. What did you see?
A. I saw a leaf of lettuce and a skid mark.
Q. And what was the condition of the floor with respect to water or dryness?
A. The floor was definitely wet.
Q. When you saw her fall at this point how far was she from this vegetable counter that you described?
A. Very close.

* * * * * * * *
Q. Could you observe where it [water] came from?
A. Yes. It came from the vegetables to preserve them, the ice.

* * * * * * * *
Q. You described the skid mark when Mrs. Torda got up. Will you describe that to the Jury in detail?
A. Well, it was like a pencil mark, like a car that had to skid to avoid hitting another car. * * *"
Plaintiff's daughter, who was not with her at the time, described the vegetable counter thus:
"Well it's a slanting position, naturally, and ice is on the whole, lettuce, perishables, and it's all ice, cracked ice, and there is lettuce and tomatoes, and radishes and celery, things of that nature * * *"
Arthur A. Theodore, general manager of the store, also described the vegetable bins or counters. He said:
"* * * they are built level, they are made out of metal * * * and, as I say there are a series of drains underneath them."
Asked if the particular bin involved was level or "built on an angle" he said that he could not recall. He testified also that it was the practice to ice the bin early in the morning before the commencement of business and at the same time to place the vegetables upon the ice. Essentially these were the facts upon which the motion for involuntary dismissal was granted.
*44 It is evident from the record that the trial court found the case to be controlled by Simpson v. Duffy, 19 N.J. Super. 339 (App. Div. 1952), certification denied, 10 N.J. 315 (1952). In Simpson the plaintiff, while a customer of defendant's self-service market, suffered personal injuries when she fell to the floor after slipping on a vegetable leaf. On appeal a judgment of involuntary dismissal entered in the trial court on defendant's motion was affirmed. In resisting the motion for judgment in the case sub judice, counsel for the plaintiff unsuccessfully attempted to distinguish the two cases. The nub of his argument was that here, in contrast to Simpson, the cause of the injury could logically be attributed to a condition which had been created by defendant, thereby relieving plaintiff of the burden of proving that defendant had either actual or constructive notice of its existence. We think the distinction was valid.
In Simpson it was indisputably established that the cause of the fall was the vegetable leaf. The record was found to be barren of evidence from which a rational determination could be made of whether the leaf was dropped on the floor by an employee of the defendant or by a customer and, even in the event that the latter could be inferred, that the leaf was on the floor for a sufficient length of time to constitute constructive notice of its presence. This holding accorded with the substantial body of law of this and other jurisdictions which is recorded in the opinion 19 N.J. Super., at page 344. The court observed in Simpson that since both customers and employees handled the vegetable matter in the ordinary course of the transaction of business, the submission of the questions of who had caused the leaf to be on the floor and how long it had been there would have been "to authorize and direct the jury to decide the responsibility of the defendants on the basis of speculation and conjecture," id., at page 345, and so would have run afoul of the accepted principle recently reiterated in Hansen v. Eagle-Picher Lead Co., 8 N.J. 133 (1951), that "the evidence must be such as to justify an inference of probability *45 as distinguished from the mere possibility of negligence on the part of the defendant." Id., at page 141.
The evidence here was susceptible of an inference that the plaintiff came to her injury because there was water on the floor at a point immediately adjacent to an open bin in which defendant for its own purposes had seen fit to place a quantity of ice. While there was no direct proof as to the fact, it was legitimately inferable that the source of the water on the floor was the ice-filled bin. Thus as distinguished from the Simpson case, evidence of how the hazard came into being was not left in a state of equipoise.
Defendant argues that it was inferable that the water fell to the floor as the result of the handling by the customers of wet vegetables which they had taken from the bin. We accept this premise. It is then urged that such finding could not be made the basis of liability unless it was established that the defendant had notice, actual or constructive, of the presence of the water. With this we cannot agree since the fact finders might reasonably have concluded that the hazard to business invitees, thus engendered, constituted a risk of harm within the reasonable foresight of defendant and therefore it should have employed a method of refrigeration to obviate this danger or should have taken other means of keeping the floor in a reasonably safe condition. See 2 Harper & James, The Law of Torts, § 16.5, at page 915 (1956). Compare Martin v. Bengue, Inc., 25 N.J. 359, 371 (1957).
In light of all of the circumstances we are convinced that the unexplained presence of water in close proximity to the bin inferentially presented a question of responsibility which defendant was called upon to answer and thus that a prima facie case was made out.
Reversed.