579 So.2d 831 (1991)
Eileen M. SCHAAP and Martin Schaap, Appellants,
v.
PUBLIX SUPERMARKETS, INC., a Florida Corporation, Appellee.
No. 90-2036.
District Court of Appeal of Florida, First District.
May 13, 1991.
*832 Stephen C. Willis of Brooks & Leboeuf, P.A., Tallahassee, for appellants.
Charles A. Stampelos, Gerald B. Sternstein, Gary A. Shipman of McFarlain, Sternstein, Wiley & Cassedy, P.A., Tallahassee, for appellee.
WOLF, Judge.
The plaintiffs, Eileen M. Schaap and Martin Schaap (Schaaps), appeal from a summary judgment in favor of Publix Supermarkets, Inc. (Publix). The Schapps allege that they had raised a genuine issue of material fact concerning the mode of operation used by Publix from which a trier of fact could determine that Publix negligently caused Mrs. Schapp to slip and fall. We disagree and affirm.
On February 19, 1989, appellant, Eileen Schaap, while shopping at the Publix Supermarket on Thomasville Road in Tallahassee, slipped and fell on a piece of debris and was injured. On July 21, 1989, Schaap and her husband sued Publix, alleging that Schaap's injury was proximately caused by Publix's negligent failure to maintain the floors of its supermarket in a reasonably safe condition.
On October 25, 1989, Publix moved for summary judgment, arguing that the Schaaps failed to meet their burden of demonstrating that Publix had either actual or constructive knowledge of a hazardous condition, and that the Schapps failed to raise a genuine issue of material fact from which a trier of fact could determine that Publix was negligent. During the hearing on Publix's motion, the Schaaps presented a first amended complaint to the trial court for consideration. The trial judge granted the Schaaps leave to file the amended complaint.
In support of its motion for summary judgment, Publix relied in part on Mrs. Schaap's deposition: At approximately 5:30 p.m. on February 19, 1989, Schaap entered the Publix grocery store on Thomasville Road with her seven-year-old daughter, Stephanie. Schaap bought some groceries and went to the checkout lane with her daughter and the shopping cart. She had been inside the store for about 30 minutes. She then realized she had forgotten to get bread, so she left her daughter with the cart and went back to the bread aisle. She was walking in front of one of the aisles leading to a cash register carrying the bread in her left hand, when she fell. Neither her daughter nor anyone else saw Schaap fall. She did not recall the specific number of the aisle in which she fell, but stated that it was probably one of the middle aisles. The store was not very crowded at the time she fell, and she did not see any Publix employees nearby.
Schaap testified that she "slipped on something very slippery," but that before she fell, she had not seen anything on the floor. After she fell, she "saw something that appeared to be brown, and it was on the heel of [her] shoe. It appeared to be a cookie." She "didn't notice anything on the floor" such as water or other debris. She believed that "the object [she] slipped on made the floor slippery." Schaap said that the cookie reminded her of the cookies in the Publix Bakery. Part of the cookie was still on the floor, and she described it as "brown, mushy, slimy. It looked like one that had been spit out or chewed and thrown out, that type of thing." Schaap never showed the cookie to her daughter. *833 She wiped the debris off her heel with a tissue and threw the tissue and debris away. She paid for her groceries and then proceeded to the office to fill out an accident report. She gave the assistant manager, William Curry, the details of what had happened, but did not show him or anyone else the spot where she fell.
The plaintiffs chiefly relied on deposition testimony of assistant manager Curry, which the Schaaps allege clearly demonstrated that Publix was on notice of the foreseeable danger created by the Publix cookie program. Curry stated that Publix had a store policy to dust mop every two hours, and that it was usually done on the even hour. As a general rule, the manager walks the floor to inspect, and there is always one manager on duty at each store. Curry was on duty on February 19, 1989, at 6 p.m., and he stated that he walked the floor periodically "all the time." He acknowledged that the terrazzo flooring was dangerous when there was food on the floor.
After Schaap reported the facts of her fall and left the store, Curry went to the area where Schaap said she had fallen. He found a small piece of cookie about the size of a quarter or a nickel. There was an insufficient amount of cookie to permit identification of where the cookie came from. Curry did not know how the cookie got on the floor nor how long it had been there. He testified that the piece of cookie may have come from the Publix bakery. Publix had a cookie club program in effect on February 19 by which any child under twelve accompanied by an adult could receive a free cookie at any time, and could eat the cookie anywhere in the store. Curry did not know how many cookies had been given out on February 19. He acknowledged that he expected children to spill cookies or portions of cookies as they were eating them throughout the store, but he said he was unaware that any other Publix customers had ever slipped and fallen on cookie debris.
The trial court concluded that there were no material facts in dispute, and that the Schapps could not prevail as a matter of law. At the hearing, Judge Davey said,
[T]he fact that they have a cookie club, which I think is not a fact in dispute, I don't think that in and of itself, you know, would allow you to take that to the jury. That would be another fact that could be put before the jury, but there still has to be some connection, causal connection between her slipping and falling and something that Publix has done. And I think the fact that they have a cookie club is not enough in and of itself to establish that. You are talking about a jury making a quantum speculative leap from the fact that since there is a cookie club some kid must have dropped it. You know, in reality, you know, you see people buy things and eat them while they are shopping, I am sure I have done that. So the negligence comes in having a condition which they either don't warn or don't remedy. And as I said, I think it is much too speculative without any evidence whatsoever to indicate how long that cookie was there. Whether it came from the cookie club, was brought in prior to that or was dropped by, you know, somebody in line two shopping carts ahead of her, that is much [too] speculative to hold someone liable when there is no evidence to say, you know, how long it has been there. And that is where the case falls down. I don't think there are any facts in dispute. I mean, I think the facts are clear. The only problem is there is no evidence in the record to indicate that there has been a breach of duty by Publix. And according to Patty and some of the other cases, that [duty] has to be there. In other words, she has to have some evidence that they were negligent, and there isn't. And I'm not willing to hold, I think it would be erroneous to hold that the fact that you have this cookie club would in and of itself be negligence, nor would I think it would be negligent for failing to have a warning on the wall saying, `We give those kids cookies, so watch out.'
(Emphasis added). We find no error in the analysis of the trial judge.
*834 To recover for injuries incurred in a slip-and-fall case, the plaintiff must generally prove that the owner of the premises had actual or constructive notice of the dangerous condition. Brooks v. Phillip Watts Enters., Inc., 560 So.2d 339, 341 (Fla. 1st DCA 1990), rev. den., 567 So.2d 435 (Fla. 1990). Constructive knowledge may be inferred from either 1) the amount of time a substance has been on the floor, or 2) the fact that the condition occurred with such frequency that the owner should have known of its existence. Brooks, supra, at 342. The owner of the store may also be held liable where an agent or employee of the store negligently caused the dangerous condition to exist. Publix Supermarkets v. Schmidt, 509 So.2d 977 (Fla. 4th DCA 1987). In addition, the method of operation of the owner may be so inherently dangerous that while the owner did not actually create the specific condition which caused the fall, they still may be held liable. Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720 (Fla. 1948).
In the instant case, there is no proof of how long the item which allegedly caused the slip had been on the floor, that this had occurred with sufficient frequency that the storeowner should have known about the substance on the floor, or that the substance was placed on the floor as the result of the actions of employees or agents of Publix. Appellants argue, therefore, that their case is based on the method of operation of the Publix cookie program.
To establish negligence in this particular case based on a theory of method of operation, the appellant must prove:
1. Either the method of operation is inherently dangerous, or the particular operation is being conducted in a negligent manner; and
2. The condition of the floor was created as a result of the negligent method of operation.
The plaintiff in the instant case has not proffered evidence that would sufficiently prove either element.
The Schapps do not allege nor have they presented evidence which would indicate that Publix was negligent in the manner in which they operated the "cookie program." This case, therefore, is unlike Wells v. Palm Beach Kennel Club, supra, where the court held that the club had created a dangerous condition by failing to provide receptacles for bottles which had been sold. We are urged to find that mere operation of the cookie program is inherently dangerous because of the manager's testimony that it may be expected that children will drop cookies on the floor and that terrazzo floor (the usual flooring found in grocery stores) was dangerous when food was on the floor. It may also reasonably be expected that other types of food will fall on the floor. Accepting the appellants' argument would effectively require us to adopt the position that running a cookie program is "inherently dangerous" or that grocery stores are strictly liable for all food spills on the floor. We decline to so hold. See Long v. Smith Food King Store, 531 P.2d 360 (Utah 1973).
The plaintiff also argues that there is sufficient evidence to establish the connection between the cookie program and the plaintiff's fall. Appellants argue that since cookies were distributed to children, and children may have eaten and dropped cookies throughout the store, a jury would be justified in inferring that a child received a cookie from the cookie program at or around 6:00 p.m. on February 19; that a child dropped part of his cookie in the area where Mrs. Schaap slipped and fell; the cookie debris Mr. Curry found was part of a Publix cookie distributed to a child via the cookie program; the part of the cookie debris found by Mr. Curry was part of the cookie debris stuck to Mrs. Schaap's heel; the cookie stuck to Mrs. Schaap's heel had created a hazardous condition; and the hazardous condition was the proximate cause of Mrs. Schaap's injury. As in Food Fair Stores, Inc. v. Trusell, 131 So.2d 730 (Fla. 1961), a jury could not reach a conclusion imposing liability on Publix "without indulging in the prohibited mental gymnastics of constructing one inference upon another inference in a situation where, admittedly, the initial inference was not justified to the exclusion of all other reasonable *835 inferences." Id. at 733; Winn-Dixie Stores, Inc. v. Manning, 143 So.2d 339, 342 (Fla. 2nd DCA 1962); Winn-Dixie Stores v. Gaines, 542 So.2d 432 (Fla. 1st DCA 1989).
Affirmed.
ALLEN, J., concurs in result only.
ERVIN, J., dissents with written opinion.
ERVIN, Judge, dissenting:
I respectfully dissent. I consider that the evidence in the case at bar did raise an issue of material fact regarding whether Publix had created a dangerous condition with its "cookie-club" program. I would therefore reverse the summary judgment and remand for further proceedings.
Summary judgment should be cautiously granted in negligence cases. Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985). A trial court should not enter such judgment unless the facts are so crystallized that nothing remains but questions of law. Id. In other words, a defendant is required to show that there is not the "slightest doubt" as to any issue of material fact, Harris v. Lewis State Bank, 436 So.2d 338, 340 (Fla. 1st DCA 1983), and to establish "unequivocally" that it was not negligent, Lee v. Old Southern Trucking, Inc., 552 So.2d 277, 278 (Fla. 1st DCA 1989), review denied, 562 So.2d 346 (Fla. 1990). I do not believe that Publix met this heavy burden.
Mrs. Schaap testified that she slipped on what appeared to be a cookie sold by Publix in its cookie-club program. The assistant manager moreover stated that children who received cookies pursuant to this program were allowed to eat them throughout the store; that he expected children to drop portions of cookies while they were eating them; that the terrazzo flooring was dangerous when food was on it; and that he found what could have been a Publix cookie at the spot where Mrs. Schaap had fallen. He also stated that he believed it was unrealistic to expect small children to eat cookies in the store without dropping them; that he had observed children eating cookies in the check-out lines and in the area in front of the counters; and that he "guessed" that the cookie he saw on the floor was from the Publix bakery. All of these facts present a factual issue as to whether Publix created a dangerous condition by permitting small children to eat cookies throughout the store instead of adopting alternative protective measures, such as by restricting cookie consumption to a particular area or, at the very minimum, providing receptacles in the store in order for uneaten portions to be discarded.
The case at bar is somewhat similar to Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720 (Fla. 1948), in which a judgment entered on a motion for directed verdict in favor of the dog track was reversed on facts showing that the track had permitted patrons to take bottled beverages to the stands without providing proper means of disposing of the bottles. Even more analogous to the facts at bar are the facts in certain out-of-state cases that specifically involve stores providing food to customers. In Tom v. S.S. Kresge Co., 130 Ariz. 30, 633 P.2d 439 (Ariz. Ct. App. 1981), the court approved the "mode-of-operation" rule as applied to a situation in which the defendant store, a self-service establishment, permitted customers to serve themselves soft drinks and carry them throughout the store while shopping. The plaintiff slipped and fell on some liquid. In reversing summary judgment in favor of the defendant store, the Arizona Court of Appeals made the following observations:
The key to the application of the "mode of operation" rule is the reasonable anticipation of patrons' carelessness under the circumstances... .
It is easily foreseeable that appellee's patrons could spill soft drinks while carrying them through the store. It does not appear that appellee restricted the consumption of soft drinks to certain areas in the store, and apparently sold the drinks so its patrons could enjoy them while shopping. Among the established facts is a statement by the store manager in his written report of the accident *836 that the "floor was wet from a spill ... soft drink probably."
Id., 130 Ariz. at 32-33, 633 P.2d at 441-42.
Similarly, in Jasko v. F.W. Woolworth Co., 177 Colo. 418, 494 P.2d 839 (1972), the defendant store sold pizza slices at a counter, and provided no chairs or tables to its patrons. Customers stood in the aisle and ate pizza from wax paper sheets on which they were served. Employees constantly swept up debris from the floor. The plaintiff testified that she slipped on a piece of pizza on the terrazzo floor. The court agreed that the plaintiff was not required to show that an employee actually dropped a piece of pizza, or that the defendant knew of the presence of the food, but only that the defendant's "method of selling pizza was one which leads inescapably to such mishaps as [plaintiff's] own," and thus that "[t]he dangerous condition was created by the store's method of sale." Id., 177 Colo. at 420, 494 P.2d at 840. The court reversed the directed verdict that had been granted to the defendant.
The majority views the evidence in the case at bar as too speculative to justify a trial on the issues, and considers that if the case were permitted to be tried, the jury would be allowed to stack inference upon inference, a circumstance which the supreme court criticized in Food Fair Stores, Inc. v. Trusell, 131 So.2d 730 (Fla. 1961). Trusell, however, involved facts that did not establish a credible link between negligent conduct of store employees and the plaintiff's accident. The plaintiff allegedly slipped on a piece of lettuce near the check-out counter and fell. The supreme court rejected application of the mode-of-operation doctrine to such facts and affirmed summary judgment in favor of the food store. In so doing the court noted that plaintiff's evidence supporting her theory of negligence was contained solely in an affidavit of an employee of the market. The employee merely stated that debris often fell into shopping carts, and that sometimes loose lettuce leaves would fall from the carts to the floor. The court concluded that the affidavit simply described a situation which the affiant had observed on occasion, but did not "even purport to be descriptive of a consistent, established course of conduct by employees of the store," and that it would therefore have been speculative for the trial judge to conclude that the condition described by the employee had occurred to the plaintiff. Id. at 733 (emphasis added).
In the case at bar, the assistant manager's testimony did constitute evidence of an established course of conduct in the operation of Publix's cookie program, which included as well his knowledge that broken cookie pieces had been dropped in the store aisles and at the check-out counters. Because the trial court must draw every possible inference in favor of the party against whom a motion for summary judgment is filed, Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985), I conclude the court erred in denying the plaintiffs their right to trial.