714 So.2d 1180 (1998)
Irma ROWE and her husband, Wallace Rowe, Appellants,
v.
WINN-DIXIE STORES, INC. and Winn-DIXIE Montgomery, Inc., Appellees.
No. 97-1473.
District Court of Appeal of Florida, First District.
August 3, 1998.
Pamela Dru Sutton of Stone & Sutton, P.A., Panama City, for Appellants.
Richard N. Blank of Richard N. Blank, P.A., Ft. Lauderdale, for Appellees.
ALLEN, Judge.
The appellants challenge a summary final judgment entered for the appellees in a slip and fall action. Because we conclude that the "negligent method of operation" theory of recovery upon which the appellants rely is not applicable to supermarket slip and fall cases, we affirm the summary final judgment.
The undisputed facts established that Irma Rowe was shopping at the appellees' supermarket when she slipped on seafood salad which was on the floor near a self-service display. The display was not attended by an employee of the appellees, and there was no evidence to suggest how long the salad had been on the floor, or that the salad had been dropped by an employee of the appellees, or that the appellees knew that the salad was on the floor, or that seafood salad had been found on the floor around the display in the past. In light of these facts, the appellants do not rely on the well-recognized rule that a store owner may be found liable for negligently failing to take reasonable steps to correct a dangerous condition on a floor after the owner, its agent, or employee has created the condition, or after the owner otherwise has actual or constructive *1181 notice of the condition. See, e.g., Food Fair Stores v. Patty, 109 So.2d 5 (Fla.1959); Brooks v. Phillip Watts Enterprises, 560 So.2d 339 (Fla. 1st DCA 1990). The appellants instead argue that a jury question was presented as to whether the appellees were negligent in the manner in which they operated the seafood salad display, and rely upon the "negligent method of operation" theory of liability expounded in Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720 (Fla.1948).
In Wells the Florida Supreme Court announced a special rule for slip and fall cases involving places of amusement where large crowds are invited to congregate. Imposing a higher duty of care upon the owners and operators of those establishments, the court indicated that such places of amusement have a continuous duty to look after the safety of their patrons, so that liability may be predicated on a negligent method of operation even without notice or knowledge of a dangerous condition. But the supreme court has declined to extend the special rule announced in Wells to slip and fall cases involving other business establishments, such as supermarkets.[1]See Food Fair Stores v. Trusell, 131 So.2d 730 (Fla.1961); Patty; Carls Markets v. Meyer, 69 So.2d 789 (Fla.1953).
Although the third district recently applied the operational negligence doctrine to a supermarket in the slip and fall case of Publix Super Market v. Sanchez, 700 So.2d 405 (Fla. 3d DCA 1997), the court nevertheless found no liability on facts which are closely analogous to those in the present case. And in approving the operational negligence doctrine in Sanchez the third district apparently failed to give proper effect to the supreme court's prior rulings, as well as this court's decision in Schaap v. Publix Supermarkets, 579 So.2d 831 (Fla. 1st DCA 1991). The supreme court precedent, as cited above, suggests that the doctrine does not apply in this context, and Schaap, upon which the third district relied, is not authority for a contrary view. While one member of the appellate panel in Schaap would have applied the doctrine, another member of the panel concurred in the result only and the third member of the panel dissented. Because a concurrence in result only expresses agreement with the ultimate decision but not the opinion, see Gerald Kogan & Robert Craig Waters, The Operation and Jurisdiction of the Florida Supreme Court, 18 Nova L.Rev. 1151, 1175 (1994), there was no majority opinion in Schaap and the case does not stand as precedent for the individual views expressed in the separate opinions. See also, Greene v. Massey, 384 So.2d 24 (Fla.1980).
In accordance with our conclusion that the operational negligence doctrine does not apply to supermarket slip and fall actions of the type involved in the present case, the appealed order is affirmed.
BARFIELD, C.J., concurs.
LAWRENCE, J., dissents with written opinion.
LAWRENCE, Judge, dissenting.
I respectfully dissent. Irma Rowe was injured when she slipped on food on the floor of Winn-Dixie's Panama City store on October 3, 1990. Two issues remain to be determined by the finder of fact in this case, namely, whether Winn-Dixie reasonably could foresee that customers would spill sea-food *1182 salad on the floor after serving themselves from an unsupervised self-serve display and, if so, whether Winn-Dixie failed to exercise reasonable care to prevent or minimize such spills. The granting of Winn-Dixie's motion for summary judgment therefore was error in my view.
The instant case is distinguishable from the usual slip-and-fall case: The defendant, in the usual case, is not charged with creating a hazardous condition, but only with having actual or constructive knowledge that such a condition exists. The Rowes, by contrast, allege that Winn-Dixie created the hazardous condition by negligently operating the seafood salad display. The Rowes urge that, despite that it is undisputed that the seafood salad was spilled by a customer, nevertheless Winn-Dixie created the risk that such spills would occur by offering food samples without stationing an attendant at the display, and without providing eating utensils, napkins, or any waste receptacle.
The Florida Supreme Court, addressing a similar claim in Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720 (1948), held that a jury question exists. The majority states that the Florida Supreme Court has "declined to extend the special rule announced in Wells to slip and fall cases involving other business establishments, such as supermarkets." Majority op. at 1181. The court indeed, in Food Fair Stores, Inc. v. Trusell, 131 So.2d 730 (Fla.1961), indicated that the Wells rule would "not apply when the dangerous condition was created by a third party and liability of the owner of the premises is conditioned upon actual or constructive knowledge of the danger." Trusell, 131 So.2d at 733. The Trusell court, however, distinguished the situation, such as the one in the instant case, where the dangerous situation was created by the shopkeeper, explaining that "the so-called `dog track or public amusement rule' might be applicable to a situation where the creator of a dangerous condition would necessarily know about it and therefore be held responsible for his own creation." Id. at 733 (citing Carls Markets, Inc. v. Meyer, 69 So.2d 789 (Fla.1953)).
Meyer, the appellee-customer in Carls Markets, slipped and fell on vegetable leaves mixed with water. Meyer's original complaint alleged that Carls Market created the dangerous condition. Meyer subsequently amended her complaint and introduced the element of notice; the trial court however failed to instruct on notice. The Florida Supreme Court held that the trial court should have instructed the jury that it must find that the store had notice in order to find liability. The court explained:
Had the plaintiffs based their case solely on the creation of a hazard by the operator of the store as they first alleged, we would be inclined to agree that there was no occasion for the charge about notice for if the plaintiffs could convince the jury that the dangerous condition was created by persons connected with the store the matter of notice was inconsequential.
Carls Markets, Inc. v. Meyer, 69 So.2d 789, 791 (Fla.1953) (emphasis added). The court explained that the underlying principle in Wells would have applied to the plaintiffs' case had they not amended their complaint, because "the creator of a dangerous condition must by the very fact, know about and be responsible for his creation." Id. at 791. The court noted that "the dangerous obstacles [in Wells] were the creations of the defendant who in effect was on notice as soon as the bottled refreshments were sold." Id.
It is undisputed in the instant case that, despite that the seafood salad Mrs. Rowe slipped on was spilled by a customer, Winn-Dixie nevertheless created the unsupervised display from which the customer spilled the seafood salad on which Mrs. Rowe slipped. Thus, just as the Wells jury was charged with determining whether the defendants were negligent in distributing bottled beverages to their patrons without providing proper waste receptacles, the fact-finder in the instant case should have the opportunity to decide whether Winn-Dixie was negligent in its method of operationin creating an unsupervised self-serve food display without providing a waste receptacle, napkins, utensils, or other means of keeping food in its proper place.
The Florida Supreme Court, in Brisson v. W.T. Grant Co. 79 So.2d 771 (Fla.1955), described the Wells rule as follows:

*1183 where the possibility or probability of consequence can be reasonably foreseen, anticipated, or prevented, an actor who does not use ordinary and reasonable care to avoid such consequences will be deemed guilty of negligence.
Brisson, 79 So.2d at 772-73. The Brisson court was careful to note that proof of actual or implied knowledge would be required in "a case involving a fall because of a failure to remove a foreign substance whose presence on the floor was unexplained ...." Id. at 772 (emphasis added). The foreign substance on the floor in the instant case however, as in Wells, was not unexplained; it was dropped there from an unsupervised food display. This is not a case where a customer slips on an errant piece of lettuce or some other slippery substance that appeared on the floor for some unknown reason. The substance on the floor in the instant case was there because of the manner in which Winn-Dixie created its merchandise display. It is for the jury to decide whether this manner of display is negligent, that is, whether it is reasonably foreseeable that people will spill the salad, and, if so, whether Winn-Dixie took adequate precautions to prevent or remove such spills.
The Rowes do not argue that providing food samples to customers is negligence per se. They rather urge that offering seafood salad to customers from an unsupervised self-service display creates a foreseeable risk of harm unless reasonable precautions are taken. Customers typically obtain seafood salad in a closed container from the delicatessen or meat department, then pay for the salad at the checkout counter. It is not reasonable to expect that seafood salad purchased in such a manner would be spilled on the floor. Most stores, for those relatively infrequent occasions when spills of packaged food do occur, have measures in place to check for and clean up the spillsmeasures which are reasonable given the level of risk involved. A store, when it opts to provide food samples for immediate consumption from an unsupervised self-serve display however, increases the risk of spills. The store's duty of care in such a situation therefore also should increase.
Other state courts have approved the "method of operation" negligence theory. The plaintiff in Torda v. Grand Union Co., 59 N.J.Super. 41, 157 A.2d 133 (1959), slipped on a vegetable leaf on the wet floor of the produce department. There was evidence that the defendant-store used ice to chill its produce. The court held that even in the absence of notice an inference properly could be drawn that the method the store used to chill its vegetables created a foreseeable risk of harm to the store's customers. The court also noted that notice would not be required, even where a customer caused the water (from the ice used in the display) and the leaf to be on the floor, since this was foreseeable given the store's chosen method of refrigeration.
The defendant-store, in Little v. Butner, 186 Kan. 75, 348 P.2d 1022 (1960), served samples of meat to its customers. The plaintiff slipped and fell on the floor that had been made slick by spilled pieces of the meat samples. The plaintiff alleged that the store "knew or by the exercise of reasonable care should have known that such meat samples or other products would be dropped upon the floor," and that the store failed to pick up pieces of meat that had been dropped. Id., 348 P.2d at 1027. The court agreed, and explained that the store was "bound to use due care to protect [its] invitees from injury, not only from defects in the premises but also from other dangers arising from the use of the premises by [the store]."[2]Id. at 1028. The court further held that with regard to the plaintiff's theory of recovery, "what constitutes the proximate cause of plaintiff's injury, as well as the question of the defendants' negligence, is one of fact to be determined by a jury from a consideration of all the evidence." Id. at 1032. The court further explained:
Where meat samples are handed out by a demonstrator to customers in a large super market as a means of acquainting the public with the product, it is not unreasonable to assume that parts of such samples *1184 will be dropped to the floor and stepped upon by customers and patrons making the floor slick, slippery and dangerous to walk upon. Due care, under such circumstances, would seem to dictate that receptacles or other means be provided for their disposal and that seasonable cleaning of the floor would be necessary. Negligence is alleged to inhere in the condition created and the fact that meat particles were dropped by customers and children of tender years is immaterial. The over-all condition was created by the defendants in carrying on the demonstration without taking the precaution, it is alleged, of providing suitable means for disposing of the samples and of cleaning the floor at seasonable intervals. Under such circumstances, the defendants breached their duty to the plaintiff in failing to warn her of the dangerous condition created. Whether the defendants should have reasonably anticipated that the handing out of meat samples to customers and children in the store would result in meat particles being dropped, making the floor slick, slippery and dangerous for use of plaintiff and other customers, seems clearly to present a question for a jury.

Id. at 1030 (emphasis added).
The plaintiff, in Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 221 A.2d 513 (1966), was injured when she slipped on a green bean in the produce section of the defendant's store. The trial court dismissed the case and the appellate court affirmed. The New Jersey Supreme Court reversed, based on the following:
When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor. If the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate; and this whether the risk arises from the act of his employee or of someone else he invites to the premises. The operator's vigilance must be commensurate with that risk....
Here the hazard could have been caused by (1) carelessness in the manner in which the beans were piled and displayed; or (2) carelessness of an employee in handling the beans thereafter; or (3) carelessness of a patron. As to (1) and (2), defendant is chargeable whether or not it was aware of its employee's neglect. Defendant's knowledge is relevant only as to (3), but even there, since the patron's carelessness is to be anticipated in this self-service operation, defendant is liable, even without notice of the bean's presence on the floor, if (4) defendant failed to use reasonable measures commensurate with the risk involved to discover the debris a customer might leave and to remove it before it injures another patron.
Id., 221 A.2d at 514.
Kansas adopted the mode-of-operation theory of recovery in slip-and-fall cases in Jackson v. K-Mart Corp., 251 Kan. 700, 840 P.2d 463 (1992). The plaintiff in Jackson slipped on a green liquid spilled on the floor in the clothing section of the defendant-store. An employee, after the fall, found a partially empty can of avocado juice near the spill. The plaintiff testified that K-Mart sells small cans of avocado juice in the cafeteria and allowed customers to consume beverages and food from the cafeteria while shopping in the rest of the store. The Jackson court, in reversing the grant of summary judgment for the defendant, explained that the method-of-operation rule would not make businesses insurers of the safety of their premises. The court stated:
The mode-of-operation rule is a limited exception and does not abrogate the general rule. The limited application of the rule was addressed in Chiara: "The mode-of-operation rule is of limited application because nearly every business enterprise produces some risk of customer interference. If the mode-of-operation rule applied whenever customer interference was conceivable, the rule would engulf the remainder of negligence law. A plaintiff could get to the jury in most cases simply be presenting proof that a store's customer could have conceivably produced the hazardous condition." A proprietor would not be liable for a dangerous condition on his premises caused by a third party absent *1185 actual or constructive notice of the condition, except where, based on the mode of operation, the proprietor could reasonably foresee that the dangerous condition would regularly occur.
Id., 840 P.2d at 470 (citation omitted). The Jackson court noted that two questions remained for the jury, namely, "whether K-Mart could reasonably foresee that customers would regularly spill beverages on the floor and, if so, whether K-Mart failed to exercise reasonable care under the circumstances." Id. The Jackson court further explained that the key to the application of the mode-of-operation rule "`is the reasonable anticipation of patrons' carelessness under the circumstances.'" Id., 840 P.2d at 469.
The "method of operation" theory of recovery in certain slip-and-fall cases has been adopted in Florida under the holdings in Wells, Meyer, Brisson. It accordingly is for the jury to decide whether Winn-Dixie reasonably should have foreseen that customers would drop seafood salad on the floor after taking a sample from an unsupervised display, and, if so, whether Winn-Dixie exercised reasonable care under the circumstances. The grant of summary judgment thus is error, in my view.
Reversal of the trial court's grant of the motion for summary judgment should not be interpreted as approving of the Rowes' claim. Denying the motion for summary judgment will not make Winn-Dixie an insurer for every accident that might occur.[3] A self-service method of operation is not per se negligent. A grant of summary judgment for Winn-Dixie will be required in the absence of further proof of negligence associated with Winn-Dixie's method of operation. The undisputed facts in the instant case show that (1) customers were invited to help themselves to the seafood salad by dipping flat crackers into the salad; (2) the display was unsupervised; (3) no waste receptacle was provided; and (4) no utensils or napkins were provided. A jury could find, on these particular facts, that Winn-Dixie should have foreseen that spills might occur. If a jury so found, then the jury would have to address the question of whether reasonable precautions to prevent injury were taken by Winn-Dixie. I would reverse the summary judgment and remand for trial.
NOTES
[1] The operational negligence doctrine was applied to a department store in Brisson v. W.T. Grant Co., 79 So.2d 771 (Fla.1955). However, in Brisson the plaintiff alleged that she tripped over an obstruction which had been constructed and maintained on the premises, and the court indicated that the operational negligence doctrine probably would not have applied had the case involved a slip and fall due to a foreign substance on the floor.

In cases involving such slip and fall injuries in stores apart from the Wells amusement context, the court has emphasized that the owner of the premises must have knowledgethrough actual or constructive noticethat there was a foreign substance on the floor. The store's method of operation did not provide a basis for liability in Trussel[Trusell] or the court's other supermarket slip and fall cases, and references to the creation of a dangerous condition in Trussel[Trusell] and other such cases are properly read as referring to the ultimate placement of the foreign substance on the floor, rather than to the store's method of operation. Indeed, in Trussel[Trusell] the court focused on the important difference of whether the foreign substance was placed on the floor by an employee or a customer.
[2] The Little court also noted that the store was not an insurer against all accidents which might befall a customer. Little v. Butner, 186 Kan. 75, 348 P.2d 1022, 1029 (1960).
[3] If a plaintiff slips on a lettuce leaf in the produce section, a grant of summary judgment for the store should be entered in the absence of a showing of how the leaf got on the floor. However, if the plaintiff can provide sufficient evidence from which a reasonable person could find that the leaf fell on the floor due to the store's negligent method of operation, the jury should decide the issue. The plaintiff's proof must rise to the level that would enable a reasonable person to determine the store's responsibility without relying on conjecture or speculation. It is undisputed in the instant case that the seafood salad came from the display set up by Winn-Dixie and was spilled by a customer. Thus, conjecture and speculation are not necessary to connect Winn-Dixie to the spill; Winn-Dixie created the display. Only where the evidence shows that the a bin is negligently built or maintained, and that a reasonable person could find that the lettuce leaf fell to the floor as a result of this negligent maintenance, would the issue of liability go to the jury.