**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2305-24

JULIETTE SUPREME,

    Plaintiff-Appellant,

v.

VILLAGE SUPER MARKET
OF NJ, LP,[1]

    Defendant-Respondent.

_____

           Submitted February 4, 2026 – Decided April 17, 2026

           Before Judges Smith and Berdote Byrne.

           On appeal from the Superior Court of New Jersey, Law
           Division, Middlesex County, Docket No. L-3665-23.

           John J. Pisano, attorney for appellant.

           Carey & Grossi, PC, attorneys for respondent (John J.
           Grossi, III, and Nastasia B. Joseph, on the brief).

PER CURIAM

---

[1] Defendant-Respondent was improperly pled as ShopRite of Old Bridge.

Plaintiff Juliette Supreme appeals the trial court's orders granting summary judgment for defendant Village Super Market of NJ, LP and denying plaintiff's motion for reconsideration. The trial court found plaintiff failed to establish that defendant had actual or constructive notice of the condition that caused plaintiff's slip and fall and further found the mode-of-operation rule did not apply. On appeal, plaintiff argued that: the trial court erred because the evidence supported an inference that defendant breached its duty to maintain a reasonably safe premises, and the mode-of-operation rule applies on this record.

We reverse the orders granting defendant summary judgment and denying reconsideration for the reasons that follow. We remand for proceedings consistent with this opinion.

I.

We view the facts from the summary judgment record in the light most favorable to the non-moving party, the plaintiff. See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021).

Defendant, Village Super Market of New Jersey, LP, is the owner of Shoprite of Old Bridge (Shoprite). On June 19, 2023, plaintiff was at the store to purchase snow crab. Her accident occurred in front of the freezer where boxes

of the crabs were located. Plaintiff slipped on water in front of the freezer which caused her to fall, suffering injuries.

Plaintiff recounted the incident:

> I turned in front of the freezer. I opened the door to the freezer. When I was approaching the front to pick up the box of crab my foot slipped in the water. The way the floor where the freezer was like a white floor. The water was on it[,] and you couldn't see it. My foot slipped on it. And my left foot – the front of my foot went under the freezer and my left leg twisted – my left foot and my knee twisted[,] and I fell on my back.

Plaintiff initially did not see what substance on the floor caused her to fall. However, while on the floor she deduced that the substance was water, since both her back and clothes were wet with a clear, odorless liquid. According to plaintiff, the water felt "icy" on her back after the fall. Plaintiff had no knowledge of where the water came from, nor how long the water was there before she fell in it.

Plaintiff saw a store employee there but observed that the employee fled the scene after she fell. ShopRite's store manager came to plaintiff's aid and summoned a store employee to clean up the water after plaintiff's fall. Eventually an ambulance crew came and helped lift plaintiff off the floor. As a result of the fall, plaintiff suffered pain in her head, left shoulder, left knee, and lower back.

3

On June 29, 2023, plaintiff sued defendant. The complaint alleged defendant "was negligent in failing to warn" patrons of a hazardous condition and further failing to alleviate it. Plaintiff asserted that defendant's negligence caused her to sustain injury.

During discovery defendant stated, "[n]o agents, servant, employees and/or representatives of this defendant witnessed the alleged incident." Further, defendant stated that its "employees regularly inspected all aisles of the store and areas outside of the aisle where customers would traverse. . . .[2] [They] performed this inspection routinely in all areas of the store where customers would be walking, and this was done on a constant basis."

Defendant moved for summary judgment, and the trial court granted defendant's motion dismissing plaintiff's complaint with prejudice. The court found plaintiff failed to show either actual or constructive notice, and that the mode-of-operation exception to the notice requirement was not applicable. The court found plaintiff failed to show that the water she slipped on had a demonstrable nexus to defendant's self-service operation.

Plaintiff moved for reconsideration and the trial court denied it, finding

---

[2] According to defendant, there was an "oral policy" in place that instructed employees to inspect store areas.

[p]laintiff has not come forth with any evidence to demonstrate either actual or constructive notice on the part of the [d]efendant. Plaintiff fell on water that she herself did not see before it caused her to fall. There is no evidence that [d]efendant had notice of the water and no evidence that the water existed for such a period [of] time that it can be said that [d]efendant should have become aware of its existence. There is no evidence that the freezer, which was in close proximity to the water on the floor, played any role in creating the water.

The mode of operation theory of liability is not applicable to the facts of this case. Nothing in the record supports an inference that her fall occurred near an area where unsealed liquid goods are sold. Plaintiff must demonstrate [d]efendant's actual or constructive notice of a dangerous condition on its premises and [p]laintiffs proofs fail in this requirement.

On appeal, plaintiff argues that all inferences accorded to plaintiff permit a jury to find defendant had constructive notice of the dangerous condition; further, the mode-of-operation rule is applicable, as the record shows that the alleged dangerous condition arose from defendant's self-service operations.

II.

Our review of a trial court's grant of a motion for summary judgment is de novo. Christakos v. Boyadjis, 262 N.J. 447, 467 (2026). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving

5

party." Ibid. (quoting Padilla v. Young Il An, 257 N.J. 540, 547 (2024)). A motion for summary judgment will be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (quoting R. 4:46-2(c)).

Our review of a judge's denial of a motion for reconsideration is abuse of discretion, following Rule 4:49-2. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021); State v. Ellison, 482 N.J. Super. 357, 371 (App. Div. 2025). An abuse of discretion occurs when "a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." State v. Taylor, 261 N.J. 440, 449 (2025) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)) (internal quotation marks omitted).

We have held a motion for reconsideration should be granted solely in "those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative competent evidence . . . ." Castano v. Augustine, 475

N.J. Super. 71, 78 (App. Div. 2023) (alterations in original) (quoting <u>Triffin v. SHS Grp., LLC</u>, 466 N.J. Super. 460, 466 (App. Div. 2021)).

III.

A.

Our Supreme Court has held "[t]he fundamental elements of a negligence claim are [(1)] a duty of care owed by the defendant to the plaintiff, [(2)] a breach of that duty by the defendant, [(3)] injury to the plaintiff proximately caused by the breach, and [(4)] damages." <u>Coleman v. Martinez</u>, 247 N.J. 319, 337 (2021) (quoting <u>Robinson v. Vivirito</u>, 217 N.J. 199, 208 (2014)). The plaintiff bears the burden to establish each element. <u>Ibid.</u> (citing <u>Polzo v. Cnty. of Essex</u>, 196 N.J. 569, 584 (2008)).

We require plaintiffs to "establish the existence of negligence 'by some competent proof,' because '[n]egligence is a fact which must be shown and which will not be presumed.' 'The mere showing of an incident . . . is not alone sufficient to authorize the finding of an incident of negligence.'" <u>Franco v. Fairleigh Dickinson Univ.</u>, 467 N.J. Super. 8, 25 (App. Div. 2021) (internal citations omitted) (first quoting <u>Townsend v. Pierre</u>, 221 N.J. 36, 51 (2015); and then quoting <u>Long v. Landy</u>, 35 N.J. 44, 54 (1961)).

7

Here, the parties do not dispute that defendant owed a duty of care to plaintiff. "It is well recognized that the common law imposes a duty of care on business owners to maintain a safe premises for their business invitees because the law recognizes that an owner is in the best position to prevent harm." Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 306 (2010).

When an invitee claims negligence against a business owner they "must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 257 (2015) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)). Absent proof of actual or constructive notice, a premises liability claim ultimately fails. Ibid. (citing Nisivoccia, 175 N.J. at 563).

We now must consider whether the trial court erred in finding plaintiff failed to establish that defendant had actual or constructive notice of the alleged dangerous condition.

i.

We first address whether defendant had actual notice of the dangerous condition.

A-2305-24

In premises liability actions, actual notice is found when an owner or one of their employees "actually" knew of the hazardous condition.  Model Jury Charges (Civil), 5.20F(8), "Duty Owed—Condition of Premises," (rev. Nov. 2022).

Plaintiff offers no probative evidence to show that defendant or one of its employees knew of this hazardous condition.  The record reveals nothing but photos of standing water on defendant's floor taken after the accident.  This is insufficient to create a genuine issue of material fact on the question.  The trial court properly decided the actual notice question.

ii.

We next address whether defendant had constructive notice of the dangerous condition.  Plaintiff contends that the "size of the accumulation" of the water as well as photographs of the water "appear[ing] dirty with footprints," supports an inference of constructive notice.  Further, plaintiff posits that since defendant's employee was present at the time and place of plaintiff's fall, defendant had constructive notice of the water on the floor.  We are unpersuaded.

Our Supreme Court has held "[a] defendant has constructive notice when the condition existed for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent."  Jeter v.

A-2305-24

Sam's Club, 250 N.J. 240, 251 (2022) (quoting Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016)) (internal quotation marks omitted). Stated differently, a defendant has constructive notice of a condition when it "existed for such a period of time that [defendant] in the exercise of reasonable care should have discovered its existence." Model Jury Charges (Civil), 5.20F(8).

We can infer constructive notice "from eyewitness testimony[,] or from '[t]he characteristic of the dangerous condition,' which may indicate how long the condition lasted." Jeter, 250 N.J. at 251-52 (second alteration in original) (quoting Troupe, 443 N.J. Super. at 602). However, "the mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Id. at 252 (alteration in original) (quoting Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013)).

Plaintiff testified that, prior to her fall, she did not know where the water had come from, could not state how long it had been there, nor did she see the water or know of its presence on the floor. Further, the record reveals no evidence of prior slip and fall reports in the area where plaintiff's fall occurred. Plaintiff did not depose any store employees concerning prior incidents or

10

complaints, and the evidence also shows that the store's floor was cleaned two days' prior to the accident.

Viewing the evidence in a light most favorable to plaintiff, we conclude plaintiff has offered insufficient evidence to prove constructive notice. Plaintiff's testimony regarding the "clear" and "icy" nature of the water supports an inference that the water was recently discharged onto the floor. We conclude the mere presence of water on the floor does not mean defendant had constructive notice of it.

B.

The dispositive question is: Does the mode-of-operation rule apply on this record? We conclude that it does.

Our Supreme Court has framed the concept this way:

> Mode of operation is a judicially created rule that alters a plaintiff invitee's burden of proof in certain premises liability negligence actions. Prioleau, 223 N.J. at 258. This Court, guided by equitable considerations, has found it appropriate to relieve a plaintiff of the burden of proving actual or constructive notice of a dangerous condition "in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia, 175 N.J. at 563. Thus "[t]he rule gives rise to a rebuttable inference that the defendant is negligent, and obviates

11

the need for the plaintiff to prove actual or constructive notice." Prioleau, 223 N.J. at 258.

[Jeter, 250 N.J. at 252 (second citation reformatted).]

For the purposes of our analysis, we initially note that a large accumulation of water located within the aisle of a supermarket, where customers constantly traverse, is a dangerous condition.[3]

The Court has long applied the mode-of-operation rule in self-service settings. See Jeter, 250 N.J. 240 (2022); Prioleau, 223 N.J. 245 (2015); Nisivoccia, 175 N.J. 559 (2003); Wollerman, 47 N.J. 426 (1966); Troupe, 443 N.J. Super. 596 (App. Div. 2016). Under the rule, a plaintiff must prove:

> (1) the defendant's business was being operated as a self-service operation; (2) that the plaintiff's accident occurred in an area affected by the business's self-service operations; and (3) that there is a reasonable factual nexus between the defendant's self-service

---

[3] See Nisivoccia, 175 N.J. at 565 (finding a dangerous condition when loose grapes are reasonably likely to fall to the ground, which caused the plaintiff's fall); Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 429 (1966) (finding a dangerous condition from the likelihood string beans would fall onto the floor and the plaintiff slipping on them); Bozza v. Vornado, Inc., 42 N.J. 355, 358 (1964) (finding an inference of a dangerous condition from the plaintiff slipping on a sticky, slimy substance on the floor); Ryder v. Ocean Cnty. Mall, 340 N.J. Super. 504, 506-08 (App. Div. 2001) (affirming the trial court's jury instruction and finding that the plaintiffs slip and fall on a clear, foamy liquid was a dangerous condition); and Torda v. Grand Union Co., 59 N.J. Super. 41 (App. Div. 1959) (finding water adjacent to an open ice bin was a hazardous condition which caused the plaintiff's fall).

A-2305-24

> activity and the dangerous condition allegedly producing the plaintiff's injury . . . .
>
> [Model Jury Charges (Civil), 5.20F(11).]

Once a plaintiff establishes these three elements, the burden shifts to the defendant to provide evidence they acted with reasonable care. Ibid. The rule is "'a special application of foreseeability principles in recognition of extraordinary risks that arise when a defendant chooses a customer self-service business model' and thus 'permits its customers to handle products and equipment, unsupervised by employees.'" Jeter, 250 N.J. at 255 (quoting Prioleau, 223 N.J. at 262).

First, we define a "self-service operation" as one "in which customers independently handle merchandise without the assistance of employees," or one where customers directly interact with "product displays, shelving, packaging, and other aspects of the facility that may present a risk." Prioleau, 223 N.J. at 262. There is no dispute, on this record, that ShopRite, a supermarket, is a self-service business.[4]

---

[4] New Jersey jurisprudence has long held a supermarket or grocery store is a self-service operation. See Jeter, 250 N.J. at 256; Nisivoccia, 175 N.J. at 565; Wollerman, 47 N.J. at 429.

Next, the accident is required to be in "areas affected by the business's self-service operations . . . ." Jeter, 250 N.J. at 255 (quoting Prioleau, 223 N.J. at 262). In a supermarket setting, these areas are generally "location[s] within a store where a customer handles loose items during the process of selection and bagging from an open display . . . ." Nisivoccia, 175 N.J. at 565. Like Jeter, plaintiff fell in an aisle of the store, specifically outside of a freezer containing crabs. 250 N.J. at 256. We conclude on this record that plaintiff fell in an area affected by ShopRite's self-service operations.

We turn to the rule's third element.

A plaintiff must show "a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." Prioleau, 223 N.J. at 262. This inquiry requires us to determine whether defendant's use of a self-serve freezer to sell boxed seafood, combined with the inevitable opening and closing of the freezer doors to access the seafood, makes it reasonably foreseeable that ice and water will spill onto the floor. See Jeter, 250 N.J. at 256.

Torda v. Grand Union Co., 59 N.J. Super. 41 (App. Div. 1959) is instructive here. In Torda, a supermarket customer slipped and fell on something that she had not noticed. Id. at 43. It was only discovered later that

14

she had slipped and fallen on water next to the self-service vegetable rack. Ibid. We concluded that

> [t]he evidence [provided] was susceptible of an inference that the plaintiff came to her injury because there was water on the floor at a point immediately adjacent to an open bin in which defendant for its own purposes had seen fit to place a quantity of ice. While there was no direct proof as to the fact, it was legitimately inferable that the source of the water on the floor was the ice-filled bin.
>
> [Id. at 45.]

The presence of water located next to the vegetable rack established a prima facie case of negligence. Ibid.

Here, the water spill location, along with the self-service operation of the seafood freezer, satisfies the reasonably foreseeable nexus requirement. Defendant supermarket elected to sell frozen, boxed seafood from a freezer where employees stocked seafood in the freezer for sale and customers removed seafood from the freezer for purchase. Consistent with our analysis in Torda, we conclude that these facts lead to a legitimate and reasonable inference that the opening and closing of the freezer door by employees and customers, combined with the movement of frozen seafood boxes in and out of the freezer could have caused ice to spill from the freezer or break off from the boxes or the freezer itself and fall onto the floor. A reasonably foreseeable outcome from

15

this normal business activity is that dislodged ice would melt on the floor outside the freezer and create a hazardous condition. When we consider these reasonable inferences in conjunction with plaintiff's testimony, it follows that the third element of the mode-of-operation rule has been satisfied.

We note that the mode of operation rule has long been held as "a very limited exception to the traditional rules of premises liability." Jeter, 250 N.J. at 257 (quoting Carroll v. New Jersey Transit, 366 N.J. Super. 380, 389 (App. Div. 2004)). On this record, we conclude that the facts of plaintiff's case fall within the limited exception to the traditional rules of premises liability. It follows that these facts are distinguishable from the facts which led to the Supreme Court's holding in Jeter. 250 N.J. 240.

In Jeter, the plaintiff alleged that she slipped on one or more loose grapes in Sam's Club. However, the evidence showed that the grapes were sold in closed clamshell containers that were taped shut. Id. at 243. The trial court found the mode-of-operation rule inapplicable because Sam's Club sold grapes in closed and secured containers rather than loosely. Id. at 244. We affirmed, as did the Supreme Court. Ibid. The Court used its analysis established in Nisivoccia, 173 N.J. 559, and Prioleau, 223 N.J. 245, to conclude that customers and employees "were not intended to handle the grapes," and the grape

packaging was "a method that posed virtually no chance of spillage during ordinary permissible customer handling." Jeter, 250 N.J. at 257.

This is not that, and the facts before us lead to a different conclusion. The record shows ShopRite intended its customers to open the freezer door and then pick up and remove their boxed frozen seafood for purchase. No loose food products were involved in this exchange. The presence of a sealed product in a self-serve area of a supermarket "does not render the mode-of-operation rule inapplicable." Id. at 262 (Albin, J., dissenting). It is "[s]tores, . . . [which] have the ability to minimize the risks to which their customers are exposed by taking common-sense precautions." Id. at 263. Discharge of ice to the floor near the freezer due to opening and closing of the freezer door, or removal of ice-encrusted crab boxes, leading in turn to ice melting on the floor, are reasonably foreseeable events in the supermarket setting. The record leads us to conclude that the mode-of-operation rule applies to defeat summary judgment. On remand, the burden of production now shifts to defendant at trial to show reasonable care in maintaining the freezer. See Model Jury Charges (Civil), 5.20F.

The trial court erred when it found the mode-of-operation rule inapplicable, improperly concluding there was no support in the record to infer

17

that the fall occurred "near an area where unsealed liquid goods are sold."  Since the record contains ample evidence to demonstrate a "reasonable factual nexus between the defendant's self-service activity" and the hazardous condition which caused the injury[5], we conclude that the trial court misapplied the law, both in its original summary judgment analysis and on reconsideration.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[5] See Model Jury Charges (Civil), 5.20F(11).